**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Guadalupe CABRAL–CASTILLO**
**and Benito Alvarado–Montes,**
**Defendants–Appellants.**

No. 93–8573.

United States Court of Appeals,
Fifth Circuit.

Oct. 3, 1994.

---

Rafael Salas, El Paso, TX (Court-appointed), for Guadalupe Cabral–Castillo.

Alejandro B. Gonzalez, El Paso, TX (Court-appointed), for Benito Alvarado–Montes.

Margaret Leachmen, Richard L. Durbin, Jr., Asst. U.S. Attys., James H. DeAtley, Acting U.S. Atty., San Antonio, TX, for appellee.

Before KING and BENAVIDES, Circuit Judges, and LEE,[1] District Judge.

TOM S. LEE, District Judge:

A three-count indictment was returned against appellants Benito Alvarado–Montes (Alvarado) and Guadalupe Cabral–Castillo (Cabral) charging each with possession with intent to distribute cocaine, conspiracy and importation of cocaine. Alvarado was charged in a separate indictment with assaulting a federal officer. Following a consolidated trial of the charges, a jury convict-ed Alvarado of each of the four counts, and he was subsequently sentenced to concurrent terms of 188 months for the drug offenses and 36 months on the assault charge. Cabral was convicted of the possession and conspiracy counts and received concurrent terms of 97 months for each count of conviction. On this appeal, Cabral challenges his conviction and sentence, contending that the district court erred in denying a motion to suppress Cabral's confession and that the sentencing judge erred in imposing a two-level increase for obstruction of justice under U.S.S.G. § 3B1.1. Alvarado similarly complains of the two-level increase for obstruction and maintains, additionally, that the sentencing court erred in assessing separate two-level upward adjustments under U.S.S.G. §§ 2D1.1(b)(1) and 3C1.2 based on the same conduct.

## I.

On the night of November 12, 1992, Border Patrol Agent Max Hidalgo observed an individual dressed in dark clothing and carrying a gym bag, later identified as defendant Alvarado, illegally entering the United States by wading across the Rio Grande River. Alvarado was watched as he ran across the Border Highway and headed north. Within a short time, another Border Patrol agent, Tamra Sandoval, observed two men leaving the area in a green Ford LTD; the driver was later identified as Alvarado and the passenger as Cabral. Responding to a call from Agent Sandoval for assistance, Border Patrol Agents Bruce Concepcion and Frederico Solis followed the LTD as it pulled into the parking lot of a bar. Agents Concepcion and Sandovol likewise entered the parking lot, stopped and exited their respective vehicles. As Agent Concepcion stepped from his vehicle, a marked green Border Patrol Suburban, the LTD driven by Alvarado drove straight toward him at a high rate of speed. Agent Concepcion jumped behind the Border Patrol vehicle, drew his revolver and fired one shot at the defendants' vehicle. The LTD struck Concepcion's vehicle, then exited the parking lot and headed east at a high rate of speed. Concepcion and Sandovol followed in sepa-

1. District Judge of the Southern District of Mis-sissippi, sitting by designation.

rate vehicles. Another agent, Martinez, who had been monitoring the radio transmissions concerning these events, joined the pursuit. As Martinez followed the LTD, he saw a black gym bag thrown from the driver's side of the LTD. At that point, Alvarado lost control of the LTD and crashed. The defendants were arrested, advised of their rights and taken to Border Patrol Headquarters. Agent Martinez retrieved the gym bag and found it to contain what appeared to be cocaine wrapped in plastic bundles. Subsequent testing at the DEA laboratory confirmed that the substance was, in fact, cocaine.

Once at the Border Patrol station, both defendants were interviewed by Customs Special Agent Robert J. Pizzuro. Alvarado did not provide a statement. Cabral, however, told agents orally and provided a written statement that Alvarado had offered him $500 to drive his car into El Paso and that Alvarado had carried the gym bag which contained the cocaine into the United States.

## II.

■ In the district court, Cabral moved to suppress his statements to Customs Agent Pizurro, claiming that his statements were effectively coerced. Following a suppression hearing at which the government, but not Cabral, presented evidence, the district court made the following findings:

> Cabral–Castillo's statement to the Customs agent was voluntary and not the product of coercion, either physical or psychological. Immediately after the car wreck in which he was involved, it was noted that the Defendant appeared "stunned", and that his forehead was bleeding from a cut. However, the statement in question was given at a different location, and more than two and one-half hours later. During this interval, Cabral–Castillo had received first-aid treatment for the cut on his head. He had also been given *Miranda* warnings at least twice. He waived his constitutional rights in writ-

ing. Furthermore, he chose to write out his statement, and to put it in his own words. In short, Cabral–Castillo gave the statement voluntarily, and with a full understanding of the fact that he could decline to make any statement. His motion to suppress must be denied.

On appeal, Cabral maintains that the district court should have granted his motion to suppress because his statements, both written and oral, were made under circumstances so oppressive as to render them involuntary. He contends, more particularly, that he was "tricked and deceived" into confessing by the agents' refusal to furnish him needed medical attention until he confessed. The uncontroverted testimony offered by the government at the suppression hearing plainly supports the district court's findings and there was therefore no error in the denial of Cabral's motion to suppress.

## III.

Both defendants challenge the district court's imposition of a two-level increase to their base offense levels for obstruction of justice under U.S.S.G. § 3C1.1 based on their having perjured themselves in their trial testimony. They maintain that the sentencing judge[2] failed to make sufficient factual findings relating to any alleged perjury to support the increases.

Cabral and Alvarado both testified at the trial and denied any knowledge of the cocaine that formed the basis of the drug charges. Both maintained, additionally, that they were attacked and beaten by the agents during their arrest. As discussed above, Cabral further claimed that Agent Pizzuro engaged in coercive conduct which resulted in Cabral's confession. Following the jury's verdicts, the trial judge expressed for the record his view of the defendants' veracity, as he was aware that their sentences would be determined by a different judge. He stated:

> I want the probation officers to note, and will—this, of course, will be on the record. With regard to the obstruction of justice

---

**2.** The case was originally assigned to Judge Harry Lee Hudspeth who conducted the pretrial proceedings, including the hearing on Cabral's motion to suppress. The case was subsequently assigned to Judge Sam Sparks, who presided over the trial, and then was reassigned to Judge Hudspeth for sentencing.

determination in the sentence, that this Court feels that both Defendants perjured themselves and testified falsely in this case, falsely accusing agents when it appears obvious that their testimony was patently false, and I believe that should go in the probation report.

The presentence investigation reports prepared by the probation officer recommended the increases in defendants' base offense levels for obstruction of justice, explaining as follows:

> During the trial in this case, the Defendants made allegations that Border Patrol agents in this particular case beat them after they were arrested and lied about the entire details of the offense. Cabral–Castillo indicated he was beaten and forced to make a statement admitting to the crime. It should be noted that at the time of the verdict, the Court ruled that there was sufficient evidence to apply an adjustment for obstruction of justice.

At the sentencing hearing, the court overruled Cabral's objection to the probation officer's findings, stating, "[O]n the obstruction of justice, which has to do with his allegedly false testimony, there is a finding that was made by another Court on that, and the Probation Office just reflected that. And I think that's a fact finding that I'm entitled to rely on." With the increase for obstruction, Cabral's guideline range on each count was 97 to 121 months; he was sentenced at the bottom of the range to concurrent terms of 97 months. The court similarly rejected Alvarado's objection to the recommendation of an enhancement for obstruction of justice, stating, "I think the calculations made in the presentence report are correct and I adopt them." The guideline range for Alvarado, with the two-point obstruction increase, was 188 to 235 months and, as with Cabral, he was sentenced at the low end, to concurrent terms of 188 months. In both cases, the sentencing court adopted the findings contained in the presentence report.

■ This court will uphold a sentence under the Guidelines "unless it was imposed in violation of the law; imposed as a result of an incorrect application of the sentencing guidelines; or outside the range of the applicable sentencing guideline and is unreasonable." *United States v. Howard*, 991 F.2d 195, 199 (5th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 395, 126 L.Ed.2d 343 (1993). Application of the guidelines is a question of law subject to *de novo* review. *Id.* Section 3C1.1 provides for the enhancement of a defendant's offense level "[i]f the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense." The comments to the section recognize that "[a] defendant's denial of guilt is not a basis for application of this provision," U.S.S.G. § 3C1.1, comment. (n. 1(c)), inasmuch as the section is not intended to punish a defendant for exercising a constitutional right, *United States v. Laury*, 985 F.2d 1293 (5th Cir.1993). A sentence may, however, be enhanced if a defendant "testi[fies] untruthfully or suborn[s] untruthful testimony concerning a material fact." *Id.* (quoting U.S.S.G. 3C1.1, comment. (n. 1(c)).

■ If, as here, a defendant objects to a sentence enhancement for perjury based on his trial testimony, the district court must "review the evidence and make independent findings necessary to establish a willful impediment to or obstruction of justice, or an attempt to do the same...." *United States v. Dunnigan*, —— U.S. ——, ——, 113 S.Ct. 1111, 1117, 122 L.Ed.2d 445 (1993). In this regard, the Court in *Dunnigan* held that

> it is preferable for a district court to address each element of the alleged perjury in a separate and clear finding. The district court's determination that an enhancement is required is sufficient, however, if ... the court makes a finding of an obstruction or impediment of justice that encompasses all of the factual predicates for a finding of perjury.

*Id.* Because the sentencing judge in this case expressly adopted the findings in the presentence report, they are treated as his own findings. *Laury*, 985 F.2d at 1308 n. 18. He also further impliedly adopted the trial court's findings. However, neither the trial judge, the sentencing judge nor the probation officer "address[ed] each element of the alleged perjury in a separate and clear find-

ing." *Id.* The issue, then, is whether the findings sufficiently encompass all the factual predicates for a finding of perjury.

 Perjury occurs when "[a] witness testifying under oath or affirmation . . . gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory." *Dunnigan,* ___ U.S. at ___, 113 S.Ct. at 1116. A matter is "material" if it is "designed to substantially affect the outcome of the case." *Id.* at ___, 113 S.Ct. at 1117; *see also* U.S.S.G. § 3C1.1, comment (n. 1(c)) (a "material statement is one which, if believed, would tend to influence or affect the outcome of the issue under determination"). Here, the trial judge specifically found that Cabral and Alvarado had "testified falsely in this case, falsely accusing agents when it appears obvious that their testimony was patently false." Though implicit in this statement is the finding that defendants willfully lied about having been beaten by agents during their arrest, that is not a sufficient basis upon which to sustain an enhancement for obstruction of justice since defendants' testimony relating to that matter was not "material." Even if the jury had believed defendants' testimony concerning their treatment at the arrest scene, that should not have "influence[d] or affect[ed] the outcome" of the trial as it had no bearing on the defendants' guilt or innocence. However, in addition to his finding that the defendants lied about the beatings, the trial judge also found, at least implicitly, that Cabral falsely accused Agent Pizurro of having obtained his confession by coercive tactics. Even though there was no explicit finding by either the trial or sentencing judge that this testimony was material, Cabral's testimony on this topic was obviously "material" in that it was clearly "designed to substantially affect the outcome of the case." The government's case against Cabral was significantly bolstered by Cabral's confession; had the jury believed Cabral's claim that his confession was other than voluntary and reliable, that certainly could have affected the outcome of the case against him. Accordingly, the findings respecting Cabral's commission of perjury are sufficient.

[8] The presentence investigation report recited not only that the defendants' accusations against the agents were false, but also that they had "lied about the entire details of the offense." From his remarks at the sentencing hearing, it seems that the sentencing judge interpreted the findings set forth in the presentence report as reflecting the findings of the trial judge. However, contrary to the representation in the presentence report and the sentencing judge's apparent perception, the trial judge made no finding, clear or otherwise, that the defendants lied about the offense itself. Rather, he found only that defendants' accusations of impropriety against the agents were patently false.[3] In the court's opinion, the sentencing judge could properly have considered and adopted the trial judge's findings on the issue of defendants' credibility, provided the record supported those findings. But where Alvarado is concerned, the trial judge's findings do not satisfy *Dunnigan,* and the sentencing judge made no independent findings that Alvarado perjured himself in his account of the details of the offense.[4] We recognize that the findings in the presentence report are treated as those of the sentencing judge inasmuch as he expressly adopted those findings. *See Laury,* 985 F.2d at 1308 n. 18. It ap-

3. Indeed, in contrast to the statements included in the presentence report, the probation officer explained as follows in an addendum to the presentence report:

Immediately after the jury rendered their verdict, the court specifically instructed the probation officers to apply the adjustment for obstruction of justice. The court rule[d] that there was sufficient evidence to indicate that the Defendants had perjured themselves *regarding the allegations that the Border Patrol agents coerced them into a confession.* Based on the court's ruling, the adjustment for ob-

struction of justice was applied. (Emphasis supplied).

4. The fact that the jury convicted the defendants suggests that the jury, at least, found that they had lied about the offense. But neither the trial judge nor sentencing judge made such a finding. *Cf. United States v. Laury,* 985 F.2d 1293 (5th Cir.1993) (affirming as adequate a district court's finding that "if the jury's verdict means anything, then Mr. Laury did commit perjury when he testified, and I believe the jury's verdict means exactly what it found").

pears, though, that the presentence report purported merely to characterize the findings of the trial judge. Since it did so inaccurately, those findings cannot sustain the enhancement.

■■■ The government argues that even if the enhancement for obstruction is error, it is harmless error since the enhancement did not affect Alvarado's sentence. It points out that Alvarado's sentencing range would have been 151 to 188 months without the enhancement, and notes that Alvarado received a sentence within that range, i.e., 188 months. This court will not affirm as harmless an erroneous sentence which could have been lawfully imposed unless the court is persuaded that the district court would have assessed the same sentence if the error had not occurred. *United States v. Tello,* 9 F.3d 1119, 1131–32 (5th Cir.1993). As there is no "persuasive evidence" in the record to suggest that the district court, which imposed the lowest sentence available under the incorrect guideline range, would have imposed the maximum sentence under the correct range, the court finds that this cause should be remanded for additional findings by the district court relating to the obstruction of justice enhancement applied in determining Alvarado's sentence.

### IV.

■■■ Alvarado next asserts that the district court erred by upwardly adjusting his base offense level on the drug charges for use of a dangerous weapon and for reckless endangerment during flight since both enhancements were based on the same conduct, resulting in an impermissible "double counting." The presentence investigation report reflects the probation officer's recommendation of a two-point increase in Alvarado's base offense level pursuant to U.S.S.G. § 3C1.2 for reckless endangerment during flight because Alvarado, upon leaving the parking lot of the bar, drove his vehicle at a high rate of speed directly at Border Patrol Agent Concepcion.[5] The probation officer recommended an additional two-level increase for use of a deadly weapon under § 2D1.1(b)(1) because Alvarado used his vehicle to attempt to run down Agent Concepcion.[6] Alvarado objected in the district court to both adjustments, not on the basis urged before this court, but instead on the basis that Alvarado was not fleeing from the officers or attempting to avoid arrest but was merely attempting to exit the parking lot of the bar.[7] The court overruled his objection and applied both enhancements, increasing Alvarado's offense level to 34, despite Comment 1 to § 3C1.2, which states, "Do not apply this adjustment in Chapter Three where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct."

As Alvarado did not object in the district court on the basis that the two adjustments

---

5. Section 3C1.2 provides for a two-level increase "[i]f the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." U.S.S.G. § 3C1.2.

6. Section 2D1.1(b)(1) provides for a two-level increase if a defendant possessed a dangerous weapon during the commission of a drug offense. U.S.S.G. § 2D1.1(b)(1).

7. In response to Alvarado's objection set forth as an addendum to the presentence investigation report, the probation officer stated that although he had mentioned the possibility of an upward adjustment for reckless endangerment in the presentence report, that enhancement "was not applied, as an adjustment for official victim was applied." He further explained that "[p]ursuant to 3C1.2 and Application Note 1 of that section, the guidelines do not allow both adjustments to be applied in the same case." It appears, how-

ever, that the probation officer's response confused his recommendations as to the two offenses, the assault and the drug offense, since as to the drug offense, he did, in fact, recommend the enhancement. In contrast, the presentence investigation report relating to the assault offense addressed reckless endangerment, but concluded that the guidelines did not authorize a double adjustment in this situation, stating:

> However, pursuant to Application Note 1 of [§ 3C1.2], this enhancement is not applied where the offense guideline in Chapter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the same conduct. As such, a two level adjustment is not being applied as a Victim Related Adjustment (namely, a three-level increase pursuant to U.S.S.G. § 3A1.2(b)), is being applied.

were for the same conduct, that issue is raised for the first time on appeal and is reviewed for plain error. *See* Fed.R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court"). Citing *United States v. Olano*, —— U.S. ——, ——, 113 S.Ct. 1770, 1776, 123 L.Ed.2d 508 (1993), this court has recently explained that four factors are considered when determining whether there has been "plain error." *United States v. Rodriguez*, 15 F.3d 408, 415 (5th Cir.1994). The first two factors are self-evident, requiring that there be an "error," and that the error be "plain," meaning it must be "clear" or "obvious." *Id.* Both of these factors are met.[8]

To satisfy the third factor, " 'the error must affec[t] substantial rights.' " *Olano*, —— U.S. at ——–——, 113 S.Ct. at 1777–78. This usually requires that the defendant show prejudice. *Id.* In contrast to the "harmless error" inquiry, though, "the defendant rather than the Government … bears the burden of persuasion with respect to prejudice." *Id.* —— U.S. at ——, 113 S.Ct. at 1778. As we have indicated, Alvarado, with a criminal history category of III and offense level of 34 and with a corresponding sentencing guidelines range of 188 to 255 months, was sentenced to concurrent terms of 188 months on each of the drug counts. Had he been sentenced based on the correct offense level, his guidelines range would have been 151 to 188 months and thus, the sentence which Alvarado received was within the correct guideline range. Nevertheless, his sentence may well have been affected by the district court's error, particularly in light of the district court's willingness to impose the lowest sentence within the incorrect sentencing guidelines range.

Even if a defendant establishes the first three "plain error" criteria, the appellate court may correct the error only if that error "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Olano*, —— U.S. at ——, 113 S.Ct. at 1779

(quoting *United States v. Atkinson*, 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)); *see also United States v. Miro*, 29 F.3d 194, 199 (5th Cir.1994). "[T]he ultimate decision whether or not to take notice of an error raised below must depend on the facts of the particular case." *Rodriguez*, 15 F.3d at 416 (quoting *United States v. Morales*, 477 F.2d 1309, 1315 (5th Cir.1973)). In this case, Alvarado did object to the enhancements recommended in the presentence investigation report under both §§ 3C1.2 and 2D1.1(b)(1), though not on the basis of "double counting." The probation officer reported, via the addendum to the presentence investigation report, that the reckless endangerment enhancement "was not applied, as an adjustment for official victim was applied." The court was apparently misled by this factual inaccuracy related by the probation officer, i.e., that only one enhancement was recommended for the incident in the bar parking lot. But even without an express objection by Alvarado on the proper basis, the district court was apprised by the probation officer of the nature of the error that would occur if both enhancements were applied, as he expressly advised in the addendum that "the guidelines do not allow both adjustments to be applied in the same case."[9] Given these circumstances, and given, further, that this court has already concluded that it must remand this case for further consideration of Alvarado's sentence due to the inadequate findings relating to the obstruction of justice enhancement, the court concludes that, in fairness, the district court, in revisiting the issue of the proper sentence, should correct the error that has occurred.

Based on the foregoing, it is ordered that Cabral's conviction and sentence are AFFIRMED. It is further ordered that Alvarado's sentence be VACATED and this cause REMANDED to the district court for further consideration of Alvarado's sentence consistent with this opinion.

---

8. Though the government argues that the separate enhancements were not based on the same conduct, clearly they were.

9. It seems obvious that the district court and Alvarado, as well as the probation officer himself, failed to detect the probation officer's error.