**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Carlos HERNANDEZ–SANDOVAL, aka Federico Ortega–Martinez, Defendant–Appellant.**

**No. 98–50356.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 30, 1999

Filed May 3, 2000

---

Steven F. Hubachek (argued), Assistant Public Defender, and Troy A. Britt, Federal Public Defender, San Diego, California, for the defendant-appellant.

Kevin Kelly (argued), and Bruce R. Castetter, Assistant United States Attorneys, San Diego, California, for the plaintiff-appellee.

Before: O'SCANNLAIN, FERNANDEZ, and T.G. NELSON, Circuit Judges.

O'SCANNLAIN, Circuit Judge:

We must decide, in this car-chase criminal appeal, whether double-counting prevents a district judge from enhancing a defendant's sentence for "endangering members of the public" and separately for endangering a person he knew to be a law enforcement officer.

I

On October 19, 1997, Carlos Hernandez–Sandoval ("Hernandez") drove a pickup truck laden with 729.95 kilograms of marijuana into the United States from Mexico via the southbound lanes of the port of entry on Interstate 5. A California Highway Patrol ("CHP") officer traveling south on that freeway turned on his emergency lights upon noting that Hernandez was driving in the wrong direction. Hernandez responded by turning off the headlamps of his truck and crossing the median to the northbound lanes, nearly causing an accident with a northbound motorist. At this point, the patrol officer activated his siren and called for back-up in his pursuit of Hernandez. Another CHP officer responded to the call, and both officers pursued Hernandez as he exited the freeway and sped through commercial and residential areas of Imperial Beach, California, at rates exceeding 80 miles per hour.

Eventually, Hernandez stopped his truck at an intersection in the town. One CHP officer then stopped his car approximately 25 feet behind Hernandez's truck,

and the other officer stopped his car to the left and approximately 20 feet in front of Hernandez's truck. While the officers' cars were stopped, Hernandez suddenly accelerated his pickup in reverse and rammed the patrol car behind him. Hernandez then changed gears and drove forward and to the left, ramming into the other patrol car before speeding away. As a result of the impact of Hernandez's truck against his car, one of the officers complained of pain in his neck, lower back, and left hand and was subsequently transported to a hospital for treatment.

Hernandez, still pursued by the CHP officers whose vehicles he had just rammed, continued to drive through residential and commercial areas of Imperial Beach at speeds reaching approximately 60 miles per hour. After temporarily losing control of his vehicle, Hernandez continued to evade arrest by entering and exiting a major freeway, driving along a surface street in the wrong direction for approximately three blocks, and entering another freeway. When Hernandez attempted a u-turn on that freeway, law enforcement officers rammed his truck with their vehicles and thereby prevented his continued flight.

Hernandez ultimately pled guilty to the importation of marijuana and conspiracy to import marijuana in violation of 21 U.S.C. §§ 952, 960, 963 (1994). After a hearing, the district court sentenced Hernandez to eighty-four months in prison. That sentence included a two-level upward adjustment under U.S.S.G. § 3C1.2 for "placing

the motoring public and pedestrians at great risk of bodily injury" and a three-level upward adjustment under U.S.S.G. § 3A1.2(b) for "the separate acts of creating a substantial risk of injury to the [CHP] officers."

Hernandez appeals his sentence.

## II

■ Hernandez argues that the district court's application of both a three-level upward adjustment under U.S.S.G. § 3A1.2(b)[1] and a two-level upward adjustment under U.S.S.G. § 3C1.2[2] constituted impermissible "double-counting" of his offenses in violation of Application Note 1 to U.S.S.G. § 3C1.2.[3] That note provides that courts should "not apply [the enhancement for recklessly endangering 'another person' during flight] where ... another adjustment in Chapter Three[ ] results in an equivalent or greater increase in offense level solely on the basis of the same conduct."

Neither party disputes the fact that the upward adjustment under U.S.S.G. § 3A1.2(b) for assault on a law enforcement officer is an "adjustment in Chapter Three" or that the adjustment results in something other than "an equivalent or greater increase in offense level" than the adjustment under U.S.S.G. § 3C1.2 for endangering "another person." Hence, the sole question before us is "whether 'the same conduct' was the sole basis for enhancing [the] defendant's sentence under both § 3C1.2 and § 3A1.2(b)." *United*

---

**1.** U.S.S.G. § 3A1.2(b) (1997) provides for a three-level enhancement, if:

during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise accountable, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury.

**2.** U.S.S.G. § 3C1.2 (1997) provides:

If the defendant recklessly created a substantial risk of death or serious bodily inju-

ry to another person in the course of fleeing from a law enforcement officer, increase by 2 levels.

**3.** In general, the application notes are binding on the courts in their construction of the Sentencing Guidelines. *See Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993) (holding that the interpretative commentary of the Sentencing Guidelines is authoritative unless it violates the Constitution, a federal statute, or is inconsistent with the guideline itself).

*States v. Hayes,* 135 F.3d 435, 438 (6th Cir.1998).

In applying both upward adjustments, the district court expressly found that Hernandez's assaults on known law enforcement officers were "separate acts" from his endangerment of the public, "even though there was only one chase." The court took pains to comment that "at one point, the truck actually came to a stop[,] [a]nd, rather than getting out of the truck, the defendant ... ran into the officer[s'] cars." Hernandez contends, however, that the district court ignored relevant case law in characterizing his reckless driving and his ramming of the CHP officers' patrol cars as "separate acts." Such a characterization, he argues, is erroneous because it amounts to "an artificial and unrealistic division of a single uninterrupted course of conduct into separate events." *United States v. Beckner,* 983 F.2d 1380, 1384 (6th Cir.1993).

■■ We review the district court's interpretation and application of the Sentencing Guidelines de novo. *See United States v. Bailey,* 139 F.3d 667, 667 (9th Cir.1998).

### III

Hernandez contends quite simply that the acts providing the basis for the district court's enhancements of his sentence under U.S.S.G. §§ 3A1.2(b) and 3C1.2 were, in all relevant respects, the "same conduct."

■■■ Our review of the case law persuades us that, where, as here, the defendant could have committed the act that endangered another person or the public at large without committing the act that constituted an assault on someone whom the defendant reasonably knew to be a law enforcement officer, the two acts are not the "same conduct." We recognize that this requires a fact-sensitive evaluation to determine where one act performed by the defendant ends and the next begins; in some situations, drawing such a bright line may be hopelessly "artificial and unrealis-

tic." This case presents no such difficulty, however, for here the defendant's actions plainly evinced a discrete and specific intent to assault the CHP officers precisely because they were CHP officers and he hoped to deter their continued pursuit of him. The case law suggests that the defendant's betrayal of a specific intent to assault law enforcement officers because they are law enforcement officers provides sufficient grounds for demarcating the relevant behavior as a discrete act for purposes of "same conduct" analysis. As the district court found in this case, Hernandez stopped his truck, changed gears, and aimed his vehicle at the officer's patrol car stopped more than eight yards behind him; he then stopped, changed gears again, and rammed the other officer's car fourteen yards ahead of him before speeding off. These actions, cabined by a specific intent to hobble his pursuers, were clearly "separate conduct" whose commission was wholly irrelevant to the court's finding that Hernandez had recklessly endangered the general public by leading the police on a high-speed car chase through the streets and freeways of greater San Diego.

The same logic implicitly undergirded our decision in *United States v. Alexander,* 48 F.3d 1477 (9th Cir.1995). In that case, bank robbers had fled the scene of their crime in a van, driving at extremely high speeds and firing several shots at the police who gave chase. *See id.* at 1482. We upheld against the defendant's protest of double counting the district court's sentence enhancements both under U.S.S.G. § 3A1.2(b) for assaulting law enforcement officers and under U.S.S.G. § 3C1.2 for recklessly endangering others. In doing so, we relied on a distinction between the acts of firing shots at the police and driving recklessly on public thoroughfares, despite the fact that both acts occurred not only within the same flight but simultaneously.

> [T]he reckless endangerment provision [of U.S.S.G. § 3C1.2] applied not only because shots were fired during the at-

tempted getaway, but also because of the risk of injury to civilians caused by the high-speed chase and by the defendants' serious violations of other traffic laws. There was no double counting. 48 F.3d at 1493 (footnote omitted). Although we did not have occasion to expatiate on the basis for the distinction between the relevant acts in *Alexander*, the considerations we rely on today amply explain the outcome of that case. First, the factual predicate for the upward adjustment under U.S.S.G. § 3C1.2, the defendant's reckless driving, could plainly have obtained in precisely the same circumstances even if the factual predicate for the adjustment under U.S.S.G. § 3A1.2(b), the defendant's shooting at police officers, had not. The recklessness of the driving did not derive from the firing of the weapon. Second, the defendant's aiming his shots at the police officers rather than in random directions clearly evinced a discrete and specific intent to deter or impede the officers' pursuit. In *Alexander*, the independence of the acts at issue, marked by the defendant's discrete and specific intents in committing them, compelled the conclusion that the acts did not constitute the "same conduct" for purposes of the Sentencing Guidelines. Identical considerations compel the identical result in the case before us today. *Cf. United States v. Swoape*, 31 F.3d 482, 483 (7th Cir.1994).

Hernandez makes much of the fact that, unlike the defendant in *Alexander*, Hernandez endangered people only by driving recklessly. This argument does not address either of the considerations that, in our view, combine in this case to establish that the acts on which the enhancements under sections 3A1.2(b) and 3C1.2 are based are not the "same conduct." The means by which the defendant endangers law enforcement officers and private individuals is a tangential matter that is relevant only insofar as it informs the issue of whether the defendant could have refrained from the acts endangering the law enforcement officers and nevertheless committed the acts that endangered the private individuals. Put another way, the fact that two persons are endangered by the same *type* of conduct does not imply that they were endangered by precisely the "same conduct." Hence, upward adjustments both for assaulting law enforcement officers and for recklessly endangering the public have been upheld even when both acts directly involved the reckless use of the same vehicle. *See United States v. Miner*, 108 F.3d 967, 969 (8th Cir.1997). In *Miner*, the defendant rammed a police roadblock and eluded police officers in a reckless, high-speed chase. The district court applied an upward adjustment for assaulting a police officer based on the defendant's ramming of the roadblock and an upward adjustment for endangering the public based on the defendant's reckless driving during the ensuing chase. The Eighth Circuit summarily affirmed his sentence. *See id.*

Hernandez relies on two cases, *United States v. Hayes*, 135 F.3d 435 (6th Cir. 1998), and *United States v. Cabral–Castillo*, 35 F.3d 182 (5th Cir.1994), wherein other circuits disapproved of additional enhancements for reckless driving under U.S.S.G. § 3C1.2. In both of those cases, however, the act providing the basis for the first enhancement and the act amounting to reckless endangerment of another person under U.S.S.G. § 3C1.2 did not appear to be demarcated by the formation of a discrete and specific intent and in any event overlapped so substantially that the latter could not have occurred without the former. These cases thus provide no support for Hernandez's contention that his acts against law enforcement officers and the public at large were the "same conduct."

In the first case, *Hayes*, law enforcement officers had stopped their cars on both sides of the defendant's vehicle and commanded the defendant to exit. *See* 135 F.3d at 436. The defendant responded by "punch[ing]" his accelerator and steering his car toward one of the officers. *Id.* The

defendant's vehicle struck the officer's and then collided with another unmarked police car a few yards down the road. *See id.* The police thereafter discovered a boy in the defendant's vehicle; the boy had been injured in the impact that the defendant had caused when he crashed his vehicle into the officers' cars. *See id.* As in the instant case, the district court applied upward adjustments to the defendant's sentence for assaulting a law enforcement officer under section 3A1.2(b) and recklessly endangering another person (the boy) under section 3C1.2. *See id.* at 437. The Sixth Circuit reversed the enhancement under section 3C1.2. The court found that the conduct underlying both upward adjustments "was the same, namely the rapid acceleration of defendant's car in the direction of other occupied vehicles." *Id.* at 438. The court's observation demonstrates that, if the defendant had refrained in the same circumstances from ramming the police cars, he would necessarily have spared both the boy *and* the police officers. Unfortunately for Hernandez, the facts in the case before us are precisely the opposite: Hernandez's endangerment of the public would have occurred *even if* Hernandez had never elected to ram the CHP officers' patrol cars.

*Cabral–Castillo* is similarly distinguishable from the instant case. In *Cabral–Castillo* the defendant was carrying a large amount of cocaine when he realized that he was under surveillance. *See* 35 F.3d at 184–85. In his attempt to flee, the defendant drove his car at high speed toward a border patrol agent, missing the agent but ramming the agent's vehicle. *See id.* The defendant was caught and convicted of drug offenses, and the district court applied to his sentence both a two-level upward adjustment under section 3C1.2 for recklessly endangering another person during flight (the border patrol agent) and a two-level upward adjustment under section 2D1.1(b)(1) for use of a deadly weapon (his car). *See id.* at 188. The Fifth Circuit remanded the sentence on other grounds but noted that the en-

hancements "clearly" were "based on the same conduct." *Id.* at 189. Analogous to the situation in *Hayes,* the facts indicate that the defendant in *Cabral–Castillo* would have been endangering no one if only he had not used his car as a deadly weapon. Indeed, the defendant's upward adjustments in *Cabral–Castillo* were based not only on precisely the same action (as was the case in *Hayes* ) but upon the same action vis-a-vis the same victim (the border patrol agent). In the case before us, on the other hand, the enhancements of Hernandez's sentence were founded not only on independent actions but on distinct victims-the police officers and the members of the general public-and the presence of these two classes of victims supported the district court's inference that Hernandez had formulated a discrete and specific intent to assault the police officers.

## IV

In sum, the case law does not support Hernandez's assertion that the district court erred in finding that the acts providing the basis for the enhancements of his sentence under U.S.S.G. §§ 3A1.2(b) and 3C1.2 were not the "same conduct." Hernandez has not shown, nor could he show, either that the acts forming the basis for the enhancements were not independent or, more fundamentally, that the act that the court characterized as endangering law enforcement officers did not evince a discrete and specific intent to deter or impede the officers' pursuit and thus was not necessarily a distinct act at all. Absent such a showing, we conclude that there were sufficient grounds for the district court to find that Hernandez's actions did not constitute the same conduct.

AFFIRMED.