**UNITED STATES of America,**
**Plaintiff Appellee,**

v.

**Maria Guadalupe LOPEZ–GARCIA,**
**Defendant Appellant.**

No. 01–50703.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 6, 2002.

Filed Jan. 16, 2003.

Ramzi Nasser, Federal Defenders of San Diego, Inc., San Diego, CA, for the defendant-appellant.

Patrick K. O'Toole, United States Attorney (when brief was filed), Carol C. Lam, United States Attorney (when opinion was filed), Tiffany R. Stephan, Assistant United States Attorney, San Diego, CA, for the plaintiff-appellee.

Before T.G. NELSON, PAEZ, and TALLMAN, Circuit Judges.

PAEZ, Circuit Judge.

Maria Lopez–Garcia appeals her sentence for transporting illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii). We must decide whether the district court erred when it (1) imposed sentencing enhancements under United States Sentencing Guidelines ("U.S.S.G.") section 3C1.2 in addition to U.S.S.G. section 2L1.1(b)(5), and (2) denied Lopez–Garcia's request for a downward departure for duress. We have jurisdiction under 28 U.S.C. § 1291. We find that the district court applied the wrong standard in determining that U.S.S.G. section 3C1.2 could be applied in addition to U.S.S.G. section 2L1.1(b)(5), because it looked to whether the basis for both enhancements was the same conduct rather than focusing on whether the sole basis for the section 2L1.1(b)(5) enhancement was "conduct related to fleeing from a law enforcement officer." Thus, we vacate the sentence and remand for resentencing. However, we conclude that the district court did not err in denying Lopez–Garcia a downward departure for imperfect duress.

## I.

## BACKGROUND

Maria Lopez–Garcia, a native of Mexico living in the United States, returned to Mexico for a short visit. Because she did not have documents allowing her to reenter the United States, when she was ready to return she arranged to be smuggled back into the country. She was taken to a safe house in San Diego, where her smuggler kept her while he waited for her to pay him. When she could not produce enough money, the smuggler told Lopez–Garcia that he intended to return her to Mexico unless she helped him smuggle

other aliens into the United States by driving them through the San Clemente checkpoint. Lopez–Garcia agreed to help the smuggler and followed him to Mexico, driving one of his cars.

On the evening of May 24, 2001, Lopez–Garcia approached the San Clemente checkpoint with two aliens hidden behind the back seat of an Acura Integra hatchback. When the border officer asked Lopez–Garcia her citizenship, she replied "Anaheim." The officer requested that Lopez–Garcia pull over to the secondary inspection area. Instead of complying, Lopez–Garcia sped away from the checkpoint. Border patrol agents pursued her northbound on Interstate 5, but lost sight of her. They were about to abandon the pursuit when they noticed that all of the traffic on the highway had stopped, and observed Lopez–Garcia's car stalled near the center median. The agents then saw Lopez–Garcia run across the highway and down an embankment. After pursuing her on foot, the agents caught Lopez–Garcia partway down the embankment and arrested her. The agents returned to her car and discovered the aliens, who were uninjured.

The border patrol conducted an investigation. The final report indicated that Lopez–Garcia had lost control of the car while driving at a speed of approximately 114 miles per hour. After applying her brakes, she had skidded and swerved across three lanes of traffic. She hit the center median with the front of the car, flipped around and hit the median with the back of the car, and finally came to a stop in the left-most lane of the highway. Both

air bags deployed, and the car suffered damage to the front and rear ends as well as to the interior. Lopez–Garcia disputed the allegation that she was traveling 114 miles per hour. She claimed instead that she was only driving around 80 miles per hour and that she merely "bumped" into the median.

Lopez–Garcia ultimately pled guilty to one count of transporting illegal aliens, a violation of 8 U.S.C. § 1324(a)(1)(A)(ii), and was sentenced on December 3, 2001. At the sentencing hearing, the government argued that Lopez–Garcia's base offense level should be enhanced under U.S.S.G. section 2L1.1(b)(5)[1] for recklessly creating a substantial risk of serious bodily injury to another while transporting illegal aliens. The government also asked for an enhancement under U.S.S.G. section 3C1.2[2] for recklessly creating a substantial risk of serious bodily injury to another in the course of fleeing from law enforcement officers. Lopez–Garcia argued against those enhancements and also asked for several downward departures, including one for imperfect duress.

The court imposed both enhancements, reasoning that both were allowable because Lopez–Garcia's act of running across the highway was separate from her reckless driving, and each act qualified for a different enhancement. The court increased her base offense level by six levels for the section 2L1.1(b)(5) enhancement and an additional two levels for the section 3C1.2 enhancement, raising it from a level 12 to level 20. The court denied several of Lopez–Garcia's requests for downward de-

---

1. U.S.S.G. section 2L1.1(b)(5) provides: *"Smuggling, Transporting, or Harboring an Unlawful Alien* ... If the offense involved intentionally or recklessly creating a substantial risk of death or serious bodily injury to another person, increase by **2** levels, but if the resulting offense level is less than level **18**, increase to level **18**."

2. U.S.S.G. section 3C1.2 states: *"Reckless Endangerment During Flight* If the defendant recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer, increase by **2** levels."

partures, but did reduce the offense level by three levels for her timely acceptance of responsibility under U.S.S.G. section 3E1.1(b). The final offense level of 17 resulted in a guideline sentencing range of 24–30 months. The district court sentenced Lopez–Garcia to 27 months' imprisonment and three years of supervised release. Lopez–Garcia timely appealed her sentence.

## II.

### ANALYSIS

■ We review *de novo* a district court's interpretation and application of the United States Sentencing Guidelines. *United States v. Castillo,* 181 F.3d 1129, 1134–35 (9th Cir.1999). We review the district court's factual findings underlying its sentencing decision for clear error. *United States v. Barnes,* 125 F.3d 1287, 1290 (9th Cir.1997).

### A. *Sentencing Enhancements*

■ The district court erred in applying section 3C1.2 in addition to section 2L1.1(b)(5) in sentencing Lopez–Garcia. When the district court enhances a defendant's offense level under both sections 2L1.1(b)(5) and 3C1.2, we must first determine whether the court applied the adjustment under section 2L1.1(b)(5) "solely on the basis of conduct related to fleeing from a law enforcement officer." U.S.S.G. § 2L1.1, cmt. n. 6. If we answer that question in the affirmative, then it is error for the district court also to enhance the offense level for reckless endangerment during flight under section 3C1.2. This approach is mandated by the interplay between section 2L1.1(b)(5), section 3C1.2, and the text of Application Note 6 to section 2L1.1. Application Note 6, in relevant part, instructs the district court as follows:

> Reckless conduct to which the adjustment from subsection (b)(5) applies includes a wide variety of conduct (*e.g.,*

transporting persons in the trunk or engine compartment of a motor vehicle, carrying substantially more passengers than the rated capacity of a motor vehicle or vessel, or harboring persons in a crowded, dangerous, or inhumane condition). If subsection (b)(5) applies solely on the basis of conduct related to fleeing from a law enforcement officer, do not apply an adjustment from § 3C1.2 (Reckless Endangerment During Flight).

U.S.S.G. § 2L1.1, cmt. n. 6.

■ Here, it is undisputed that from the moment Lopez–Garcia sped away from the border checkpoint until she was apprehended, she was attempting to flee from the agents. It is clear from the district court's ruling that the sole basis for the application of the section 2L1.1(b)(5) enhancement was Lopez–Garcia's reckless flight. We are bound to follow the application notes, *see Stinson v. United States,* 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993), and here, the directive is clear: "If subsection (b)(5) applies solely on the basis of conduct related to fleeing from a law enforcement officer, *do not* apply an adjustment from § 3C1.2." U.S.S.G. § 2L1.1, cmt. n. 6 (emphasis added). The district court's reliance on Lopez–Garcia's flight to adjust her offense level under section 2L1.1(b)(5) precluded it from applying an additional upward adjustment under section 3C1.2.

In its ruling, the district court focused on whether both adjustments were based upon the same conduct. The court found that Lopez–Garcia's foot flight across the highway was a separate act from recklessly driving her car as she attempted to flee from the border patrol agents. By separating Lopez–Garcia's flight into discrete segments involving different conduct, the district court concluded that adjustments under both sections 2L1.1(b)(5) and 3C1.2 could be applied.

However, regardless of the number of distinct acts that may be attributed to Lopez–Garcia, as long as the section 2L1.1(b)(5) enhancement was based solely on her conduct in fleeing from law enforcement officers, the additional enhancement for endangerment during flight cannot apply. The government claims that the district court's approach is endorsed by *United States v. Dixon*, 201 F.3d 1223, 1234 (9th Cir.2000), where we held that adjustments under sections 2L1.1(b)(5) and 3C1.2 could be applied concurrently because the adjustments were not based on the same conduct, and by *United States v. Hernandez–Sandoval*, 211 F.3d 1115, 1120 (9th Cir.2000), where we allowed adjustments under both sections 3A1.2(b) and 3C1.2. We disagree.

In *Dixon*, the sole basis for the district court's adjustment under section 2L1.1(b)(5) was Dixon's concealment of the aliens "in the trunk of a vehicle, where [they] ... were unable to extricate themselves." 201 F.3d at 1228. Because Dixon had also driven recklessly, with "a total disregard for the safety of the passengers and the motoring public," *id.* at 1229, an alternative ground for an enhancement under section 2L1.1(b)(5) was available, but the district court used this dangerous driving to impose an enhancement under section 3C1.2. *Id.* In reversing the adjustment under section 2L1.1(b)(5) because the aliens were not actually in a trunk, we noted that if the adjustment had been proper, Application Note 6 would not have prevented an adjustment under section 3C1.2 as well. *Id.* at 1234. In so noting, we pointed out that the two adjustments

were not based on the same conduct—the basis for the adjustment under section 2L1.1(b)(5) was concealment of the aliens in the trunk, whereas the basis for the adjustment under section 3C1.2 was Dixon's conduct in fleeing from the law enforcement officers. *Id.* Thus, the restriction in Application Note 6 did not apply because the basis for the enhancement under section 2L1.1(b)(5) was not conduct solely related to flight.

By focusing on *Dixon's* brief reference to "same conduct," rather than the text of Application Note 6, the district court misconstrued *Dixon*. *Dixon* merely pointed out that concurrent enhancements may be imposed under sections 2L1.1(b)(5) and 3C1.2 when section 3C1.2's enhancement is based on flight from a law enforcement official and section 2L1.1(b)(5)'s enhancement is *not* based on such flight. To interpret this comment to mean that it is permissible to apply an enhancement under section 3C1.2 on the basis of flight from a law enforcement official and an enhancement under section 2L1.1(b)(5) on the basis of another segment of such flight, as the district court did, reads too much into *Dixon* and violates Application Note 6. We decline to follow that approach.

*Hernandez–Sandoval* does not compel a contrary finding. In that case, we approved concurrent upward adjustments under U.S.S.G. sections 3C1.2 and 3A1.2[3] for a defendant who both recklessly endangered the motoring public and intentionally endangered California Highway Patrol officers. 211 F.3d at 1120. Application Note 1 to section 3C1.2 instructs the district court: "Do not apply this enhancement where the offense guideline in Chap-

---

**3.** U.S.S.G. section 3A1.2 provides in relevant part:

*Official Victim* If ... (b) during the course of the offense or immediate flight therefrom, the defendant or a person for whose conduct the defendant is otherwise account-

able, knowing or having reasonable cause to believe that a person was a law enforcement or corrections officer, assaulted such officer in a manner creating a substantial risk of serious bodily injury, increase by **3** levels.

ter Two, or another adjustment in Chapter Three, results in an equivalent or greater increase in offense level solely on the basis of the *same conduct*." U.S.S.G. § 3C1.2, cmt. n. 1 (emphasis added). Thus, although all of the defendant's conduct occurred during the course of his flight from the Highway Patrol officers, our focus was whether the district court relied on the same conduct as the basis for both adjustments. *Hernandez–Sandoval,* 211 F.3d at 1118. In holding that the district court did not rely on the same conduct, we stressed that the basis for the enhancement under section 3C1.2 was the fact that the defendant entered the United States from Mexico by driving north in the southbound lane of Interstate 5, whereas the basis for applying the adjustment under section 3A1.2(b) was defendant's conduct, after he was stopped, of suddenly accelerating his pickup in reverse and ramming into the patrol car behind him. *Id.* at 1116, 1118. We held that for the purpose of the same-conduct analysis required by Application Note 1 to section 3C1.2, the defendant's intentional act of assaulting the Highway Patrol officers was sufficiently discrete that it could be treated as separate conduct that was unrelated to endangering the general public with his reckless driving. *Id.*

Although *Hernandez–Sandoval* resembles this case insofar as both involved a continuous chase and an enhancement under section 3C1.2, *Hernandez–Sandoval* did not include an enhancement for reckless conduct during flight under section 2L1.1(b)(5), and thus did not trigger the restriction in Application Note 6 to section 2L1.1. This is an important distinction. Application Note 6 instructs us to consider whether the conduct was based solely on flight from a law enforcement officer, and does not direct us to engage in Application Note 1's same-conduct analysis.[4] Thus, the analysis we pursued in *Hernandez–Sandoval* is not helpful here.

■ By recklessly fleeing, Lopez–Garcia endangered the concealed aliens, the motoring public, and the border patrol agents. Nonetheless, on the record here her wrongful behavior is fully captured by the six-level enhancement under section 2L1.1(b)(5). Because the district court applied the six-level enhancement under section 2L1.1(b)(5) on the basis of Lopez–Garcia's flight from law enforcement officials, we must reverse the additional two-level enhancement under section 3C1.2 as directly contrary to Application Note 6's binding instruction.[5] We therefore re-

4. To the extent that the district court may have determined that a conflict existed between Application Note 6 to section 2L1.1(b)(5) and Application Note 1 to section 3C1.2, Application Note 6 would prevail under normal rules of statutory interpretation, because it is the more specific of the two and relates to the specific offense characteristic. *See, e.g., United States v. Colacurcio,* 84 F.3d 326, 333 (9th Cir.1996).

5. Because the sentencing enhancements resulted in an eight-level increase in the base offense level and a substantially longer sentence, Lopez–Garcia also argues that the district court erred in failing to apply a heightened standard of scrutiny to the sentencing

enhancements. When sentencing enhancements have an extremely disproportionate effect on the sentence, the district court must apply a clear and convincing evidentiary standard. *See, e.g., United States v. Jordan,* 256 F.3d 922, 929 (9th Cir.2001) (holding that a nine-level adjustment and sentence increase from 70–87 months to 151–188 months required heightened evidentiary standard); *United States v. Mezas de Jesus,* 217 F.3d 638, 643, 645 (9th Cir.2000) (holding that a nine-level adjustment and sentence increase from under two years to almost five years required heightened evidentiary standard); *United States v. Hopper,* 177 F.3d 824, 833 (9th Cir. 1999) (holding that a seven-level adjustment and sentence increase from 24–30 months to

mand for resentencing on an open record. *See United States v. Matthews,* 278 F.3d 880, 885 (9th Cir.) (en banc), *cert denied,* —— U.S. ——, 122 S.Ct. 2345, 153 L.Ed.2d 173 (2002).

### B. *Duress Departure*

Although we remand for resentencing, we deem it appropriate to address Lopez–Garcia's request for a downward departure on the basis of an imperfect duress defense because this issue is likely to be raised again. Lopez–Garcia claims that the district court required her to prove a complete duress defense, thus improperly denying her an imperfect duress departure under U.S.S.G. section 5K2.12.[6] The basis for this claim is the district court's statement that the smuggler's implied threats did not justify Lopez–Garcia's wrongful conduct. We hold that the district court did not err in its application of section 5K2.12 to deny Lopez–Garcia a departure on the basis of an imperfect duress defense.

 Under section 5K2.12, the court can decrease a defendant's sentence under a theory of imperfect duress—coercion or duress under circumstances not amounting to a complete defense. *See United States v. Pizzichiello,* 272 F.3d 1232, 1238 (9th Cir.), *cert. denied,* —— U.S. ——, 123 S.Ct. 206, 154 L.Ed.2d 84 (2002); *United States v. Pinto,* 48 F.3d 384, 388 (9th Cir.1995). Here, the dispute centered on whether the events leading up to Lopez–Garcia's

wrongful actions warranted a departure from the applicable guideline range under section 5K2.12. After a full airing of the issues, the district court declined to depart. In so doing, the court stated that the smuggler's threats did not justify Lopez–Garcia's wrongful actions. We reject Lopez–Garcia's characterization of this statement as indicating that the court refused to consider a departure on the basis of imperfect duress. When placed in context, the court's statement reflects its consideration of the reasonableness of Lopez–Garcia's actions in light of her belief that she was compelled to act as she did, as required by section 5K2.12.

In declining to depart, the district court indicated that Lopez–Garcia's behavior might have warranted a duress departure if she had stopped at the checkpoint and told the border officers that she was in danger. Under the circumstances, however, her actions were unreasonable and did not warrant a departure on the ground of imperfect duress. The district court properly considered the imperfect duress departure, applied the correct standard, and exercised its discretion in declining to depart. There was no error.

### III.

### CONCLUSION

The district court erred in imposing enhancements under both U.S.S.G. sections 2L1.1(b)(5) and 3C1.2 because Application

---

63–78 months required heightened standard of proof). We need not reach this issue because we remand for resentencing.

**6.** U.S.S.G. section 5K2.12 provides in relevant part:

*Coercion and Duress* (Policy Statement) If the defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense, the court may decrease the sentence below the applicable guideline

range. The extent of the decrease ordinarily should depend on the reasonableness of the defendant's actions and on the extent to which the conduct would have been less harmful under the circumstances as the defendant believed them to be. Ordinarily coercion will be sufficiently serious to warrant departure only when it involves a threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency.

Note 6 precludes the imposition of an enhancement under section 3C1.2 in cases, like that here, where an enhancement under section 2L1.1(b)(5) is based solely on conduct performed while fleeing from law enforcement officials. However, the district court properly applied the sentencing guidelines in denying Lopez–Garcia a downward departure for duress. We vacate and remand for resentencing.

VACATED and REMANDED for resentencing.