**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

———————————————

No. 93-1011

———————————————

UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                    versus

BILLY JOE MILLS,
a/k/a Bobby Joe Mills,

                                        Defendant-Appellant.

———————————————

Appeal from the United States District Court
for the Northern District of Texas

———————————————

(December 8, 1993)

Before JOHNSON, WIENER and DeMOSS, Circuit Judges.

WIENER, Circuit Judge.

    This sentencing case implicates the proper application of a
relatively new provision of the United States Sentencing Guidelines
(the Guidelines)SQsubsection (b) of § 3E1.1SQwhich became effective
November 1, 1992.[1]  Here, the district court found that Defendant-
Appellant Billy Joe Mills had clearly demonstrated his acceptance

_____

    [1]  United States Sentencing Commission, <u>Guidelines Manual</u>,
§ 3E1.1(b) (Nov. 1992).

of responsibility, and awarded the 2-level decrease in his offense level pursuant to § 3E1.1(a). The court refused, however, to award Mills the additional 1-level decrease under § 3E1.1(b) (hereafter, subsection (b)). This is the aspect of his sentencing that Mills appeals. Agreeing with Mills that the district court erred in denying him the additional 1-level decrease under subsection (b), we reverse and modify his sentence and, as modified, affirm.

I

FACTS AND PROCEEDINGS

This case proceeded on an extremely fast track in the district court. Mills and his brother were charged by indictment on June 16, 1992, with conspiring to transport, and transporting, stolen goods in interstate commerce. The government posited that Mills was in a continuing commission of the crime from its inception in January 1992 through June 16, 1992, the date on which he was charged.

Mills was arraigned on July 2, 1992, just two weeks and two days after he was charged. On July 6, the court set Mills' trial date for August 3, 1992, just a month and a day after his arraignment and only six weeks after he was charged and his criminal conduct ceased.

On July 13, 1992SQseven days after his case was set for trial, 11 days after his arraignment, and only six weeks after he ceased his criminal conduct and was chargedSQcounsel for Mills and counsel for the government reached a tentative plea agreement: If Mills would plead guilty to one count of the two-count indictment, the

2

government would dismiss the other count at sentencing.

Both counsel apparently assumed that Mills would accept the plea agreement thus negotiated on July 13, as on that day Mills' re-arraignment was scheduled for Thursday, July 16, three days later. But on Wednesday, July 16SQtwo days after counsel had reached the tentative plea agreement and one day before Mills was scheduled to be re-arraignedSQhis counsel advised government counsel that Mills had not found the tentative plea agreement acceptable. The re-arraignment scheduled for the following day, July 16, was thus upset. The day after that (Friday, July 17) counsel for Mills filed a Motion for Leave to File a Late Motion and Brief, stating that "[a]t this point, it is dubious whether this case will result in a plea." Six days later, on Thursday, July 23, the government filed a response to Mills' July 17 motion, agreeing to some of Mills' discovery requests and objecting to others.

Mills apparently had a quick change of heart: On the following Thursday, July 30SQone week to the day after the government had filed its response to Mills' discovery motion and 28 days after his arraignmentSQMills pleaded guilty to the conspiracy count in exchange for the dismissal of the remaining count of the indictment. The record does not reflect precisely when Mills informed the government that he would plead guilty, but his intention to do so had to have been thus communicated sometime after July 23 (the day on which the government filed its discovery response) but before July 30 (the day on which Mills entered his

3

plea).  The government's brief to this court confirms by implication that the notification of intent to plead guilty pre-dated the entry of plea on July 30 (". . . neither the court nor the government could even be certain that Mills would actually plead guilty on June 30th until he in fact did so plead").

In due course, the district court accepted Mills' guilty plea, ordered a pre-sentence investigation to be completed by September 10, and set October 8 as the date for sentencing.  As initially submitted (at a time before subsection (b)'s November effective date), the presentence investigation report (PSR) recommended a 2-level decrease in Mills' offense levelSQthe only adjustment for acceptance of responsibility then extant in the GuidelinesSQand reported the amount of loss suffered by the victims of the crimes perpetrated by Mills and his brother as "in excess of $500,000."

Sentencing was re-scheduled several times as a result of Mills' objections to the portion of the PSR that established the quantum of victim loss as exceeding $500,000.  In a second addendum to the PSR, the loss was reduced to $409,050; however, it was later revised upward to $517,820.  As a result of several postponements, preparation of two PSR addenda, and re-schedulings, the last of which was on the court's own motion and resulted from its determination to consider further the possibility of an upward departure (which never eventuated), Mills was not sentenced until December 17, 1992.

That was some six weeks after the November 1 effective date of § 3E1.1's newly-added subsection (b), with its provision for a

third 1-level decrease for _timeliness_ of acceptance of responsibility. Presumably because it was such a recent addition to the Guidelines, subsection (b) and the additional 1-level reduction were never addressed in Mills' PSR or in either of the two addenda thereto.

At sentencing the court accepted the probation department's amended calculation of Mills' offense level as follows: Base offense level, 4; specific offense characteristics, +12; more than minimal planning, +2; abuse of a position of public or private trust, +2, for a sub-total of 20; giving effect to -2 for acceptance of responsibility under § 3E1.1; producing a net offense level of 18. Coupled with a criminal history level of I, the resulting Guidelines range for imprisonment was 27-33 months. The court sentenced Mills to 33 months in prison (the maximum under that range) plus three years of supervised release (also the maximum) and a special assessment of $50.

The sentencing hearing had commenced on December 3, 1992, but was adjourned and continued until December 17, 1992. At both sessions, the court and counsel for Mills engaged in extensive dialogue on the contested issue of the quantum of victim loss to be used in calculating Mills' offense level. Also discussed at length was the court's considerationSQeventually droppedSQof a possible upward departure. In contrast, the matter of Mills' entitlement to a 2-level decrease for acceptance of responsibility under subsection (a) of § 3E1.1 was never questioned by the court or the government. And it was only as an after-thought, at the very end

5

of the two-session sentencing hearing, that subsection (b)'s additional 1-level decrease in offense level was mentioned for the first time.  On the penultimate page of the transcript of the two-session sentencing hearing, the following brief colloquy took place between the court and defense counsel:

> COUNSEL:  Your Honor, for purposes of the record, was there a two-level or three-level reduction for the acceptance of responsibility?
>
> THE COURT:  He wouldn't be entitled to a three-level because his offense level was not 16 or above.  He can't get the extra--
>
> COUNSEL:  I believe the court set the offense level at 18.
>
> THE COURT:  That's correct.  He had received acceptance of responsibility for two in the presentence report--minus 2 in the presentence report.
>
> COUNSEL:  Right.  Would he be--I believe my position is that he would be eligible for a 1-level--
>
> THE COURT:  No.  He gets another reduction of one level if his plea is timely and the offense level, except for acceptance of responsibility, is 16 or above.

Only in that short exchange did the court ever advert to the additional 1-level reduction of subsection (b):  The quoted discussion was preceded by the court's unrelated statement to Mills that appellate counsel and a record of the district court proceedings would be provided at no cost if he could not pay for them; and was followed by another unrelated statement by the court to Mills concerning the Sentencing Guidelines and the statutory maximum sentence.

6

II

ANALYSIS

A.    Standard of Review

We review the sentencing court's finding on acceptance of responsibility for clear error but with more deference than under a pure clearly erroneous standard.[1]  A finding is clearly erroneous when, although some evidence supports the decision, we are "left with the definite and firm conviction that a mistake has been committed.[2]  "Review of sentences imposed under the guidelines is limited to a determination whether the sentence was imposed in violation of law, as a result of an incorrect application of the sentencing guidelines, or was outside of the applicable guideline range and was unreasonable."[3]

B.    Acceptance of Responsibility

Mills was sentenced under the version of the Guidelines that became effective November 1, 1992.[4]  The only aspect of his

_____

[1]  United States v. Watson, 988 F.2d 544, 551 (5th Cir. 1993) (citing United States v. Kinder, 946 F.2d 362, 367 (5th Cir. 1991) cert. denied, _____ U.S. _____, 112 S.Ct. 2290, 119 L.Ed.2d 214 (1992)), petition for cert. filed, ____ U.S.L.W. ____ (U.S. July 29, 1993) (No. 93-5407).

[2]  United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948).

[3]  United States v. Matovsky, 935 F.2d 719, 721 (5th Cir. 1991) (citing 18 U.S.C. § 3742(e)).

[4]  United States Sentencing Commission, Guidelines Manual, (Nov. 1992).  Irrespective of the version of the guidelines in effect at the time a defendant commits the acts constituting the offense, or enters his plea, or is convicted thereon, he is to be sentenced under the version in effect at the time of sentencing. Only when that version would produce a more severe punishment, and thus implicate the Constitution's proscription of ex post facto

7

sentencing with which we are here concerned is acceptance of responsibility under § 3E1.1, specifically the third or additional 1-level reduction in offense level for assisting authorities in the investigation of the defendant's own misconduct, a 1992 provision added as subsection (b).[5]

In an opinion handed down in a parallel case today, we analyze and explicate subsection (b) in excruciating detail,[6] finding that subsection (b) establishes a tripartite test (the Tello test) for entitlement to a third 1-level decrease: 1) The defendant must be found by the sentencing court to be entitled to the basic 2-level decrease under subsection (a); 2) his offense level, as determined prior to application of the 2-level decrease under subsection (a), must be 16 or greater; and 3) he must have assisted authorities by taking either or both of the "steps" provided in subparagraph (b)(1) and (2).[7] Once the defendant is found to have met all three prongs of the Tello test,[8] the district court is directed, under the imperative of the final clause of subparagraph (b), to award the additional 1-level decrease in offense level.[9]

We shall consider initially the first and third prongs of the

laws, will an earlier version of the guidelines be applied at sentencing; and such was not the case here. See, e.g., United States v. Suarez, 911 F.2d 1016, 1021 (5th Cir. 1990).

[5] U.S.S.G. § 3E1.1(b).

[6] United States v. Tello, slip op. ____.

[7] Id. at ____.

[8] Id. at ____.

[9] Id. at ____.

8

Tello test, follow that with a brief examination of its second prong, then conclude with a check for the possibility of harmless error. For Mills, the first prongSQthe defendant's entitlement to a 2-level decrease under subsection (a)SQwas met when the sentencing court adopted the recommendation contained in the Presentence Investigation Report (PSR) that Mills be awarded such a decrease. The government did not object then or on appeal, either to the PSR's recommendation or to the court's award of the basic 2-level decease for acceptance of responsibility. We therefore need not further review the court's finding on that issue, the significance of which for the instant analysis is that the first prong of the Tello test was thereby satisfied.

The third prong of the Tello testSQthe defendant's assisting authorities in the investigation or prosecution of his own misconductSQis satisfied if he is found to have taken either of two "steps," one defined in subsection (b)(1) (timely providing complete information to the government concerning his own involvement in the offense), and the other, defined in subsection (b)(2) (timely notifying authorities of his intention to enter a plea of guilty sufficiently early in the proceedings to permit the government to avoid preparing for trial and the court to allocate its resources efficiently).[10]

Nothing in the district court docket sheet or in any other part of the record, particularly the transcripts of the plea and sentencing hearings, advert to the subsection (b)(1) "step," i.e.,

---

[10]  Id. at ____ .

9

the defendant's providing complete information to the government. Neither is that step referred to in the PSR, presumably because it was prepared before the effective date of subparagraph (b). Thus we have no reason to consider the subsection (b)(1) step.

Not so, however, for the "step" defined in subsection (b)(2). Although the PSR is equally silent as to this "step"SQpresumably for the same reasonSQthe record is replete with historical facts relevant to this step's substance: the _timeliness_ of Mills' notifying authorities of his intention to plead guilty, and the assistance to authorities resulting therefrom, i.e., permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently, the latter being defined as permitting the court to "schedule its calendar efficiently."[11]

The statements of fact and statements of the case in the appellate briefs of both the government and the defense, as well as the record itself, establish beyond cavil thatSQeven in this "fast track" caseSQthe third prong of the _Tello_ test was met. As noted earlier, Mills was charged on June 16, 1992, thereby terminating his criminal activity, and was arraigned two weeks and two days later. A mere 11 days after arraignment a tentative plea agreement was reached by counsel for both sides, was initially found unacceptable by Mills, but in a quick turnabout was accepted by Mills within a matter of days. The government was so informed sometime before July 30SQless than a month after arraignment, and

_____

[11] U.S.S.G. § 3E1.1, comment. (n. 6); _Tello_, slip op. at ____ .

10

only 1-1/2 to 2-1/2 weeks after counsel for the parties had reached the tentative plea agreement.

Although not a requirement of Tello's third prong, formal entry of Mills' guilty plea occurred on July 30, 1992. That was less than a month after his arraignment and only six weeks after he was charged.

That Mills' early notification to authorities of his intention to enter a plea of guilty permitted the government to avoid preparing for trial and the court to schedule its calendar efficiently, is not thrown open to question by the fact that on July 6th, the Monday following the Thursday on which Mills was arraigned, the court set a tentative trial date for August 3, 1992SQa scant four weeks following Mills' arraignment and six weeks following his being charged. Whatever else might be observed about such a fast track trial date setting, there can no quibble about its being tentative at best. Surely neither the prosecution nor the defense could have proceeded to trial on August 3; in addition to common sense and experience, support for this observation is found in defense counsel's July 17 motion regarding briefing and discovery. As noted in Mills' brief, "no witness list, exhibit list, jury instructions or motions in limine were filed by either the government or the defense. No motions other than the several boilerplate discovery motions were filed." Under any realistic analysis of the instant scheduling, Mills clearly took the step defined in subsection (b)(2) when, sometime before July 30, he notified authorities of his intention to enter a plea of guilty.

11

For the first time on appeal, the government attempts to subject this determination to doubt, and to question this conclusion. We find this argument unavailing. In this vein, we find particularly significant the fact that, for all of its protestations, the government's brief never comes right out and says that Mills' plea notification came too late to prevent the government from preparing for trial. Neither does that brief anywhere state that the government did in fact prepare for the tentatively scheduled August 3 trialSQa jury trial at that. We are satisfied that if it had thus prepared, we would have been so informed by the government in its brief. The government reads the court's statements in the above-quoted dialogue with defense counsel as denying the additional 1-level reduction because Mills' "plea was not timely." We shall see in our consideration of the second prong of the <u>Tello</u> test, however, that such a reading is invalid. Read in context of the entire sentencing hearing, the statement relied on by the government as a denial of the decrease for lack of timeliness is shown to be nothing of the kind; rather, the denial is seen to be grounded in offense level, pure and simple.

Having observed that Mills satisfied the first and third prongs of <u>Tello</u>'s tripartite test, we turn lastly to the second prong to see whether Mills' offense level, determined prior to the operation of subsection (a)'s 2-level reduction for acceptance of responsibility, is "level **16** or greater." In the above-quoted brief dialogue between the court and defense counsel, occurring as

12

it did at the tail end of the second sentencing hearing and <u>after</u> the court had announced that it would impose a prison term of 33 months, we find a clearly erroneous factual determination.  The court rejected out-of-hand any consideration of the "three-level reduction for the acceptance of responsibility," which defense counsel urged, "because [Mills'] offense level was not 16 or above."  In this statement the court was simply mistaken.

Both the PSR and the court's own earlier discussion of Mills' offense level make it abundantly clear that the level determined and used by the probation department and by the court in calculating Mills' sentencing range was 20 "prior to the operation of subsection (a)" and 18 thereafter.  In fact, when defense counsel tried to question the court's denial further, the court cut off the defense inquiry and <u>correctly</u> stated the rule that Mills "gets another reduction of one level if his plea is timely and the offense level, except for acceptance of responsibility, is 16 or above."  Although the court continued in its refusal to consider that additional 1-level reduction, in so doing it implicitly reaffirmed its reliance on its initial, clearly erroneous finding that Mills' "offense level was <u>not</u> 16 or above." (emphasis added.)

As Mills' offense level indisputably was above 16, both prior to and after allowance for the basic 2-level reduction under subsection (a), he obviously satisfied this prong of the <u>Tello</u> test just as he had the first and third prongs.  Having thus satisfied all three prongs, Mills was entitledSQas a matter of rightSQto the

13

third 1-level reduction in his offense level.[12]  Given the mandatory language of the final clause of subsection (b)SQthat the sentencing court is to "decrease the offense level by **1** additional level" for any defendant determined to be eligible thereforSQthe court was without any sentencing discretion whatsoever to deny Mills the third 1-level decrease.

C.  Harmless Error

In its appellate brief the government did not suggest that if we should find an error in Mills' sentencing, we should find it to be harmless.  We nonetheless look for harmlessness on our own motion.[13]  And, when we do so in the instant case we find that the court's sentencing error was not harmless.

Mills' sentencing range of 27 to 33 months was calculated on the basis of an erroneously determined offense level of 18 and criminal history category of I; and the 33-month prison term assessed by the court was the highest available under that erroneously determined sentencing range.  Had the proper offense level of 17 and the same criminal history category of I been used to calculate Mills' sentencing range, it would have been 24-30 months, obviously one in which the assessed term of 33 months is not included.  Thus the court's error was not harmless.

Most of the time when that is the case we must vacate and

---

[12]  <u>Tello</u>, slip op. ____.

[13]  Fed. R. Crim. P. 52(a); <u>see</u> <u>also</u> 18 U.S.C. § 3742.

14

remand for resentencing.[14] But not so here. When we examine the instant record in a manner implicitly called for under the methodology specified in Williams v. United States,[15] we find that the sentencing court left no doubt that, as far as it was concerned, Mills should be incarcerated for the maximum term permitted under the applicable Guidelines range but without implementation of an upward departure. In light of that observation, we would be wasting judicial resources if we were to vacate Mills' sentence and remand his case for what undoubtedly would be a rote imposition by the district court of the highest term of incarceration permitted under the correct sentencing range of 24-30 months. For purposes of the instant case, that is what is meant by "same sentence."[16] So, instead of vacating and remanding for resentencing by the district court, we reverse the term of incarceration imposed by the district court, modify that term to one of 30 monthsSQthe maximum within the correct sentencing rangeSQand affirm Mills' sentence as thus modified. In all other respects Mills' sentence as imposed by the district court is affirmed.

REVERSED and MODIFIED in part and, as thus modified, AFFIRMED.

---

[14] United States v. Williams, 961 F.2d 1185, 1187 (5th Cir. 1992) (citing Williams v. United States, ____ U.S. ____, 112 S.Ct. 1112, 1121, 117 L.Ed.2d 341, 354-55 (1992)).

[15] Williams, 112 S.Ct. at 1112.

[16] Tello, slip op. at ____.