# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

## No. 01-41171
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SANTIAGO MEDINA-ANICACIO,

Defendant-Appellant.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

March 24, 2003

Before EMILIO M. GARZA and CLEMENT, Circuit Judges, and DAVIS,[*] District Judge.

EDITH BROWN CLEMENT, Circuit Judge:

Medina-Anicacio appeals his enhanced sentence pursuant to his violation of 8 U.S.C. § 1326(a)-(b)(2), illegal reentry subsequent to an aggravated felony conviction, arguing that: (1) possession of a deadly weapon is not an aggravated felony under the federal sentencing guidelines; and (2) his sentence should have been reduced for acceptance of responsibility. We affirm in part, and reverse and remand in part.

_____

[*]District Judge of the Eastern District of Texas, sitting by designation.

## I. FACTS AND PROCEEDINGS

On April 4, 2001, United States Border Patrol agents apprehended Santiago Medina-Anicacio ("Medina") as he was walking west of the Border Patrol checkpoint near Freer, Texas. Medina admitted to agents that he was a Mexican citizen, that he did not have documents allowing him to enter and remain in the United States, and that he had entered the United States by crossing International Bridge No. 2 in Laredo, Texas, with a group of tourists. An investigation revealed that Medina had previously been ordered removed from the United States on February 3, 1998, following the revocation of his probation and the imposition of a 16-month sentence in the Superior Court of California, Los Angeles County, for the felony offense of possession of a deadly weapon. The weapon was an adjustable dagger that was found during a pat down of Medina's person.

The government charged Medina by a three-count indictment with, *inter alia*, being illegally present in the United States after deportation subsequent to an aggravated felony conviction. Medina entered a plea of guilty. After his guilty plea, the U.S. Probation Office prepared a pre-sentence investigation report ("PSR"), which calculated Medina's base offense level at eight. Because of Medina's California felony conviction for possession of a deadly weapon, which the Probation Office determined to be an aggravated felony, the Probation Office added sixteen points to his offense level pursuant to United States Sentencing Guidelines ("U.S.S.G.") § 2L1.2(b)(A). The Probation Office declined to adjust Medina's offense level downward under U.S.S.G. § 3E1.1, because Medina had not accepted responsibility for the offense to the probation officer.

Medina filed a written objection to the PSR on the ground that possession of a deadly weapon was not an aggravated felony. Medina also objected on the ground that the court should sentence him under the proposed version of the sentencing guidelines that was to go into effect on November

2

1, 2001. He argued that under the 2001 version, only an eight-level increase was appropriate for his prior conviction. Medina only raised the "proposed guidelines" argument at the sentencing hearing. The district court overruled the objection and sentenced him to 100 months in prison and a three-year term of supervised release. Medina filed a timely notice of appeal, and argues that: (1) possession of a deadly weapon is not an aggravated felony under the federal sentencing guidelines; and (2) his sentence should have been reduced for acceptance of responsibility.

## II. DISCUSSION

### A. Preservation of the Aggravated Felony Issue for Appeal

As an initial matter, we must determine whether Medina preserved for appeal his claim that the district court erred in finding that his prior conviction for the California concealed dagger offense is a conviction for a "crime of violence" qualifying as an "aggravated felony" under § 2L1.2 of the 2000 sentencing guidelines. Medina's written objection to the PSR stated:

> The defendant objects to paragraph 12 of the Pre-Sentence Report (PSR). The defendant believes the offenses [sic] listed in Paragraphs 12 [the concealed dagger offense] *is not an 'aggravated felony'* and therefore he should not be given a sixteen level upward adjustment *pursuant to Section 2L1.2(b)(1)(A) of the proposed amendment to the Sentencing Guidelines*. The proposed amendment to Part L, Offenses Involving Immigration, Naturalization and Passports employs a graduated scale increasing a defendant's base offense level depending on the classification of the offense. In the instant case, paragraph 25 Possession of a Deadly Weapon, *the offense used to increase the defendant's base offense level 16 points*, [the concealed dagger offense,] *would under the proposed amendments only be a 8 level increase in the base offense level*.

(emphasis added). At sentencing, Medina's counsel renewed his objections:

> Your Honor, I filed some objections. It's the same as the previous case, to see if the Court would go by the proposed guidelines. I think it's scored differently under the proposed guidelines. And also we ask the Court—or we believe that this is once again an over-representation of his criminal history.

3

The court overruled Medina's objections, but did not specifically address whether Medina's concealed dagger offense qualifies as an "aggravated felony" under § 2L1.2 of the 2000 sentencing guidelines.[1]

The Government now argues that Medina effectively waived his "aggravated felony" claim of error by arguing in the district court that he should receive only an eight-level increase[2] under the proposed amendments to the sentencing guidelines (that were to go into effect on November 1, 2001), rather than the 2000 edition of the sentencing guidelines, which applied at the time of Medina's sentencing.

Preliminarily, we must decide whether Medina's counsel stated his objection to the PSR clearly enough to allow the district court an opportunity to rule on his objection that the California concealed dagger offense is not an "aggravated felony". Medina's written objection to the PSR claimed that Medina's concealed dagger offense was "not an aggravated felony," and Medina's counsel renewed, although clumsily, this claim of error at sentencing by stating that "we believe this [sentence] is once again an over-representation of [Medina's] criminal history." Even if Medina's counsel had not renewed the objection at the sentencing hearing, once a party raises an objection in writing, if he subsequently fails to lodge an oral on-the-record objection, the error is nevertheless preserved for appeal. *Bender v. Brumley*, 1 F.3d 271, 277 (5th Cir. 1993). Consequently, we conclude that Medina's objection was clear enough to provide the district court with opportunity to

---

[1]While the district court did not address Medina's "aggravated felony" argument at the hearing, it accepted the PSR's finding that the California felony conviction qualified as an aggravated felony.

[2]Medina does not pursue the eight-level enhancement argument on appeal. Unless the proscription on *ex post facto* laws is implicated, a defendant is to be sentenced under the version of the sentencing guidelines in effect at the time of sentencing. *See United States v. Mills*, 9 F.3d 1132, 1136 n.5 (5th Cir. 1993). Thus, the district court correctly applied the 2000 version of the guidelines.

rule on it.

The Government contends that Medina conceded that his prior felony conviction constituted an aggravated felony by arguing that the proposed 2001 version of the sentencing guidelines should have applied. Although Medina contended that possession of a deadly weapon was not an aggravated felony, he requested that the eight-level increase from the 2001 version of the sentencing guidelines apply to his sentence, which is the upward enhancement applied for aggravated felonies. U.S.S.G. § 2L1.2(b)(1)(A). The Government contends that Medina's insistence that the eight-level 2001 sentencing guideline apply was a concession that the California weapon possession charge was, in fact, an aggravated felony.[3] Thus, the Government maintains that this Court should review the question of whether the weapon possession charge is an aggravated felony under plain error review because the district court never had the opportunity to rule on Medina's claim.

Generally, this Court reviews the district court's application of the Sentencing Guidelines *de novo* and its findings of fact for clear error. *United States v. Landeros-Arreola*, 260 F.3d 407, 410 (5th Cir. 2001); *United States v. Salter*, 241 F.3d 392, 394 (5th Cir. 2001). Arguments raised for the first time on appeal are subject to the plain error standard. *Salter*, 241 F.3d at 394. When a defendant objects to his sentence on grounds different from those raised on appeal, we review the new arguments raised on appeal for plain error only. *See United States v. Cabral-Castillo*, 35 F.3d 182, 188-89 (5th Cir. 1994).

Here, Medina's written objection to the PSR clearly stated his position that his concealed

---

[3]Under the 2001 guidelines, only an eight-level upward enhancement applies to crimes that are considered aggravated felonies. *See* U.S.S.G. § 2L1.2(b)(1)(C) (2001). The Government further notes that the definitions of "aggravated felony" under the 2000 guidelines and the 2001 guidelines were identical.

dagger offense was "not an 'aggravated felony'" under the proposed 2001 version of the sentencing guidelines. Because the 2000 and 2001 versions of the guidelines both incorporate § 1101(a)(43)'s definition of "aggravated felony", Medina has raised the issue of whether his concealed dagger offense is an "aggravated felony" within the meaning of 8 U.S.C. § 1101(a)(43). Moreover, the addendum to the PSR specifically addressed Medina's objection, stating that "Possession of a Deadly Weapon is an aggravated felony by definition," and that "Possession of a Deadly Weapon meets the definition of 'crime of violence' since possessing the weapon creates a substantial risk of physical force against the person or property of another." The district court, therefore, considered whether Medina's concealed dagger offense constituted an "aggravated felony" under 8 U.S.C. § 1101(a)(43). Medina's request for an eight-level increase is more properly construed as an argument in the alternative: if the court were to find that the prior California conviction was an aggravated felony, then Medina argued that it should only result in an eight-level increase under the 2001 sentencing guidelines instead of a 16-level increase under the 2000 sentencing guidelines. Accordingly, we review the district court's resolution of the "aggravated felony" issue *de novo*.

## B. Possession of a Deadly Weapon as an Aggravated Felony

On appeal, Medina contends that the district court erred in concluding that his conviction for possession of a deadly weapon was an aggravated felony.

Section 2L1.2 of the 2000 sentencing guidelines incorporates 8 U.S.C. § 1101(a)(43)'s definition of "aggravated felony." Section 1101(a)(43) lists multiple acts that constitute "aggravated felonies," including "a crime of violence (as defined in section 16 of Title 18, but not including a purely political offense) for which the term of imprisonment at [sic] least one year." 8 U.S.C. § 1101(a)(43)(F). Section 16 states that a "crime of violence" is:

6

(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another; or (b) any other offense that is a felony and that, by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

18 U.S.C. § 16. The district court accepted the PSR's conclusion that Medina's conviction for the concealed dagger offense qualifies as a prior conviction for a crime of violence.

Medina argues that to be an aggravated felony, possession of a deadly weapon would have to constitute a crime of violence under 8 U.S.C. § 1101(a)(43). *See* U.S.S.G. § 2L1.2, comment n.1. Because California law only requires that the offender knowingly possess and conceal the weapon, Medina argues that possession of a deadly weapon is: (1) not a crime of violence because it does not have as an element the use, attempted use or threatened use of physical force against the person or property of another; and (2) the crime, by its nature, does not present a substantial risk that the perpetrator will intentionally use force against the person or property of another in the course of perpetrating the offense. *See* 18 U.S.C. § 16.

We agree with Medina that the California concealed dagger offense is not a crime of violence under § 16(a), because it does not have as an element the "use, attempted use, or threatened use of physical force against the person or property of another." *See* 18 U.S.C. § 16(a). Whether the California concealed dagger offense qualifies as a crime of violence under § 16(b), however, is a closer question.

While a state's treatment of a felony conviction does not constrain this Court when examining federal sentence enhancements, state law has been found to aid this Court's analysis of the effect of a state court's conviction on a defendant's federal sentence. *Landeros-Arreola*, 260 F.3d at 410. Both parties agree that Medina was convicted under California Penal Code § 12020(a). The PSR

7

does not specify the date upon which Medina committed his offense, but it indicates that the California court sentenced him on November 12, 1996. At that time, California law provided that "[a]ny person in this state who . . . carries concealed upon his or her person any dirk or dagger is punishable by imprisonment in a county jail not exceeding one year or in the state prison." CAL. PENAL CODE § 12020(a) (West 1995). Under California law, a "defendant's intended use of the instrument is neither an element of the offense nor a defense." *People v. Rubalcava*, 1 P.3d 52, 60 (Cal. 2000) (holding that the intent to use a dagger as a stabbing weapon is not an express element of California Penal Code § 12020(a)).[4] As the Government points out, however, in defining a "dirk" or "dagger", the California legislature described it as a "knife or other instrument . . . that is *capable of ready use* as a stabbing weapon that may inflict great bodily injury or death." *People v. Sisneros*, 67 Cal. Rptr. 2d 782, 783 (Cal. Ct. App. 1997) (citing CAL. PENAL CODE § 12020(c)(24)) (emphasis in original).

In *United States v. Chapa-Garza*, 243 F.3d 921, 924-27 (5th Cir. 2001), a case upon which Medina heavily relies, this Court held that a Texas conviction for driving while intoxicated ("DWI") did not constitute a crime of violence under 18 U.S.C. § 16(b), and therefore a court could not consider it as an "aggravated felony" under U.S.S.G. § 2L1.2(b)(1)(A). Because § 16(b) contains the language "by its nature" to modify "felony", this Court held that it was required to apply a categorical approach in determining whether an offense is a crime of violence. *Chapa-Garza*, 243 F.3d at 924. Thus, this Court examines "whether a particular defined offense, in the abstract, is a

---

[4]In *Rubalcava*, the court also noted that the California Legislature made the offense of carrying a concealed dirk or dagger a "'*general intent crime*' and expressly stated that '*[n]o intent for unlawful use* would be required for violations of the prohibition on the concealed possession upon the person of an otherwise lawful dirk or dagger.'" 1 P.3d at 58 (emphasis in original).

crime of violence," regardless of the actual underlying facts of the case. *Id.* Accordingly, to be a crime of violence, § 16(b) requires "recklessness as regards the substantial likelihood that the offender will intentionally employ force against the person or property of another *in order to effectuate the commission of the offense*." *Id.* at 927 (emphasis added). The *Chapa-Garza* court noted that, because the offender commits the Texas crime of felony DWI when he begins operating a vehicle while intoxicated after two prior DWI convictions, intentional force against the person or property of another is virtually never used *to commit* the offense. *Id.* Consequently, this Court held that felony DWI is not a crime of violence as contemplated by § 16(b).

*Chapa-Garza* relied on *United States v. Velazquez-Overa*, 100 F.3d 418 (5th Cir. 1996), for the proposition that § 16(b)'s "in the course of committing the offense" clause means that physical force may be used to carry out the offense, rather than the broader interpretation under U.S.S.G. § 4B1.2(a)[5] that there is a risk that physical injury could be a result of the offense. In *Velazquez-Overa*, this Court held that the crime of indecency with a child involving sexual contact was a crime of violence as defined in § 16(b) because, in the course of committing the offense, it was likely that it would be necessary to use physical force to "ensure the child's compliance" and "perpetrate the crime." *Chapa-Garza*, 243 F.3d at 927 (citing *Velazquez-Overa*, 100 F.3d at 422). Possession of

---

[5]U.S.S.G. § 4B1.2(a) reads:

> (a) The term "crime of violence" means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that –
> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious *potential risk of physical injury to another*.

(emphasis added).

9

a concealed dagger is not analogous to such an offense. Because an offender perpetrates the crime once he takes possession of and conceals the dirk or dagger, it is unlikely that any physical force would be used in the process.

In *United States v. Hernandez-Neave*, 291 F.3d 296 (5th Cir. 2001), a case similar to the case at hand, this Court employed *de novo* review to hold that the Texas felony crime of unlawfully carrying a firearm in an establishment licensed to sell alcoholic beverages, was not a crime of violence under § 16(b). This Court noted that one perpetrates the Texas possession offense once one steps over the threshold of an establishment licensed to sell liquor while carrying a firearm. Likewise, Medina perpetrated the California possession offense once he took possession and concealed the dagger. As such, it is clear that there cannot be a substantial risk of violence *in the course of committing* the offense, and therefore, § 16(b) does not apply.[6]

In applying *Chapa-Garza*'s abstract, categorical approach, this Court has further observed that "we do not look to either possible physical violence nor to any particular conduct by a defendant, violent or otherwise." *Hernandez-Neave*, 291 F.3d at 299. Accordingly, although violence may eventually result once the necessary elements are present for the offender to have perpetrated the weapon possession offense, that eventuality is outside the scope of our *Chapa-Garza* analysis. The

---

[6]The dissent's attempt to distinguish *Hernandez-Neave* from this case is not convincing. In *Hernandez-Neave*, the Texas statute at issue provides that "if a person intentionally, knowingly, or recklessly carries on or about his person a handgun on any premises licensed or issued a permit by the state of Texas for the sale of alcoholic beverages, he has committed a third degree felony." 291 F.3d at 298 (citing TEX. PENAL CODE § 46.02(c)). Thus, the intent element goes to the carrying of a handgun—a non-violent act. Similarly, the general intent element of § 12020(c)(24) relates to the act of carrying a concealed dagger—a non-violent act. *Rubalcava*, 1 P.3d at 58 (noting that the "dirk or dagger portion of section 12020 criminalizes 'traditionally lawful conduct,'" and thus construed § 12020 to contain a knowledge element). As such, it is not clear that the cases can be distinguished on the basis that the intent element in this case applies to conduct that is "violent by nature".

10

dissent disregards this point by creating hypotheticals to illustrate its version of the law. The possibility that a "gang member" may be "emboldened to start a fight, knowing that the concealed dagger in his possession will enable him to overpower his unsuspecting victim," is a scenario that lies far afield from the categorical approach that *Chapa-Garza* dictates.[7]

It is also important to note that the Court in *Chapa-Garza* construed § 16(b)'s phrase "in the course of committing the offense" to refer to the force necessary *to* effectuate the offense. 243 F.3d at 927. The Court did *not* construe this phrase to encompass force used *while* effectuating the offense. Consequently, even if this Court views possession of a concealed dagger as a "course of conduct", as the dissent suggests,[8] possession of a concealed dirk or dagger would still not be a crime of violence under *Chapa-Garza*. In any event, it is difficult to imagine how one would use force "against the person or property of another," 18 U.S.C. § 16(b), with the dirk or dagger if it is still

---

[7]*Hernandez-Neave* is instructive here as well. In that case, this Court noted that "the Texas legislature passed this law to limit the risk of mixing guns and alcohol," likely because of the high probability that violence could result. 291 F.3d at 299. Yet, as the Court recognized, "unlawfully carrying a firearm or other weapon identified in Tex. Penal Code § 46.02 into a place licensed or permitted to sell alcoholic beverages is not a 'crime of violence' even though a subsequent shooting would leave the shooter open to other felony charges which would be in the crime of violence category." *Id.* at 300.

[8]While it is plausible to view the offense of possessing a concealed dirk or dagger as a "course of conduct", it is not relevant to our analysis. In *Chapa-Garza*, this Court stated without citing any authority that an offender commits felony DWI once he begins driving. 243 F.3d at 927. Yet, one may view DWI as a continuum: once the individual begins to drive the vehicle, he is guilty of the offense, but the offense continues as long as he continues to drive. *United States v. Chapa-Garza*, 262 F.3d 479, 483-84 (5th Cir. 2001) (Barksdale, J., dissenting from denial of rehearing en banc). In *Hernandez-Neave*, this Court similarly stated without citing any authority that an offender commits the felony crime of unlawfully carrying a firearm onto a premises licensed to sell alcoholic beverages when he carries a firearm onto a premises licensed to sell alcoholic beverages. 291 F.3d at 299. In both cases, this Court did not find it relevant that one could consider both offenses as continuing courses of conduct. Because the continuum argument was irrelevant in *Chapa-Garza* and *Hernandez-Neave*, it is no more relevant here.

11

"concealed upon his or her person," CAL. PENAL CODE § 12020(a).[9]

Furthermore, the dissent's suggestion that we look at the "continuing risk" of violence under § 16(b) ignores the careful distinction between the "crime of violence" definition in § 16(b), which is limited to the risk of violence "in the course of committing the offense" and the broader definition set forth in U.S.S.G. § 4B1.2(a)(2), which does not contain that limitation. *Compare* 18 U.S.C. § 16(b) (". . . substantial risk that physical force against the person or property of another may be used *in the course of committing the offense.*") (emphasis added) *with* U.S.S.G. § 4B1.2(a)(2) (". . .otherwise involves conduct that presents a serious potential risk of physical injury to another."). This Court has "made clear that § 16 and § 4B1.2(a) are different, and that what qualifies as a crime of violence under one does not necessarily qualify under the other." *United States v. Charles*, 301 F.3d 309, 312 (5th Cir. 2002) (en banc) (footnote omitted). The dissent's analysis would conflate an important distinction between the two definitions, effectively reading the "in the course of" clause out of § 16(b).

Thus, because there is no substantial risk that an offender may use violence to perpetrate the weapon possession offense, Medina's California conviction does not constitute a crime of violence under § 16(b), and therefore is not an aggravated felony under § 1101(a)(43).

## C. Reduction of Sentence for Acceptance of Responsibility

Medina also argues, for the first time on appeal, that the district court erred in failing to award

---

[9]The dissent makes much of the fact that *Chapa-Garza* involved a non-violent instrument. It is clear, however, that a car in the hands of a drunk driver can be a violent instrument. Moreover, *Hernandez-Neave*, which applies the *Chapa-Garza* framework, involved a firearm. The Court did not regard the fact that the Texas possession offense involved a potentially violent instrument as a dispositive factor in its analysis of whether it was a crime of violence, nor do we here.

an adjustment for his acceptance of responsibility. Whether a defendant has sufficiently demonstrated an acceptance of responsibility is a question of fact. *United States v. Spires*, 79 F.3d 464, 467 (5th Cir. 1996). "The defendant bears the burden of demonstrating that he is entitled to the reduction, and [we] review[] the sentencing court's determination with even more deference than the pure 'clearly erroneous' standard." *United States v. Flucas*, 99 F.3d 177, 180 (5th Cir. 1996) (citation omitted). Nevertheless, we review the sentencing court's judgment for plain error because Medina failed to object to the PSR's recommendation against a reduction in the offense level for acceptance of responsibility.[10] *Salter*, 241 F.3d at 394; *Cabral-Castillo*, 35 F.3d at 188-89.

Under the plain error analysis, this Court may only reverse based on a forfeited error when there is: (1) an error; (2) that is clear or obvious; and (3) that affects the appellant's substantial rights. *United States v. Calverly*, 37 F.3d 160, 162-64 (5th Cir. 1994) (en banc) (citing *United States v. Olano*, 507 U.S. 725, 732, 734 (1993)). If the appellant establishes these factors, this Court may exercise its discretion to correct the error if it seriously affects the fairness, integrity, or public reputation of judicial proceedings. *Olano*, 507 U.S. at 732.

Medina contends that he is entitled to the two-level adjustment under U.S.S.G. § 3E.1.1(a) because he admitted the facts of his offense and his relevant conduct at the time of his arrest and entered a timely plea of guilty. He further maintains that he is entitled to an additional one-point reduction under § 3E1.1(b).

Section 3E1.1 of the sentencing guidelines directs the sentencing court to reduce a defendant's offense level "[i]f the defendant clearly demonstrates acceptance of responsibility for his

---

[10]The PSR declined to recommend a reduction in the offense level for acceptance of responsibility because Medina "ha[d] not accepted responsibility for the offense to the probation officer."

offense[.]" U.S.S.G. § 3E1.1(a). "The entry of a guilty plea does not entitle a defendant to a reduction as a matter of right." *Flucas*, 99 F.3d at 180; *see* § 3E1.1, comment n.3. If a defendant enters a guilty plea prior to trial, truthfully admits the conduct comprising the offense, and admits, or at least does not falsely deny, any additional relevant conduct for which he is accountable, the court may find significant evidence of the defendant's acceptance of responsibility. *United States v. Salinas*, 122 F.3d 5, 7 (5th Cir. 1997).

The PSR indicates that, at the time of his arrest, Medina admitted that he illegally entered the United States. Medina also admitted the facts of his offense at his guilty-plea hearing. Yet, according to the PSR, Medina "declined to provide a statement for acceptance of responsibility" when his attorney was present. Because Medina had not "accepted responsibility for the offense to the probation officer," the PSR declined to recommend a reduction in the offense level.

"A reduction in sentence for acceptance of responsibility requires a showing of sincere contrition on the defendant's behalf." *United States v. Nguyen*, 190 F.3d 656, 658 (5th Cir. 1999) (internal quotation and citation omitted). A court evaluating the sincerity of a defendant's claim of responsibility may consider a defendant's refusal to elaborate on the circumstances surrounding his offense to the probation officer. *United States v. Nevarez-Arreola*, 885 F.2d 243, 244, 246 (5th Cir. 1989) (affirming, under the "clearly erroneous" standard, the district court's denial of an acceptance of responsibility reduction where the defendant "failed to elaborate on the circumstances surrounding the offense to the probation officer" and did not exercise his right of allocution, and where there was no statement of record "expressing remorse or contrition").

At the sentencing hearing, when given an opportunity for allocution, Medina stated: "coming in illegally . . . has become a very serious crime, but my intentions were not to come into this country

14

and to remain here to work, but I was only passing through.  Because my main goal was to go to Canada because I wanted to study some French."  Medina claimed that he had some childhood friends living in Cuvet, Canada, but he could not explain how it would have been possible for him to legally enter Canadian territory.

Medina's statements at the sentencing hearing are more in the nature of an attempt to mitigate his conduct than a sincere expression of remorse, and certainly fall short of showing "sincere contrition" for his offense.  *Nguyen*, 190 F.3d at 658.  A review of the record has not revealed any other statement indicating remorse or contrition.  Moreover, Medina's refusal to talk with the probation officer calls his sincerity into question.  *See Nevarez-Arreola*, 885 F.2d at 246.  Consequently, we hold that the district court did not plainly err in declining to award Medina a downward adjustment in his sentence for acceptance of responsibility.

### III.  CONCLUSION

Because we conclude that the district court erred in ruling that Medina's California conviction for possession of a concealed dagger was an aggravated felony, we REVERSE and REMAND with regard to this part of the sentence.  However, the district court did not plainly err in declining to award Medina a reduction in his sentence for his acceptance of responsibility.  Therefore, we AFFIRM with respect to that part of his sentence.

EMILIO M. GARZA, Circuit Judge, dissenting:

By focusing on the trees, the majority opinion has lost sight of the forest. The majority opinion focuses so narrowly on one aspect of the panel opinion in *United States v. Chapa-Garza*, 243 F.3d 921 (5th Cir. 2001), that it loses sight of the text of 18 U.S.C. § 16(b) as well as the message in the California statute under which Medina was previously convicted. The purpose of that state statue is, simply, to outlaw carrying a deadly instrument of violence: a concealed dagger "capable of ready use as a stabbing weapon that may inflict great bodily injury or death." CAL. PENAL CODE §§ 12020(a), (c)(24). The only purpose of possessing a concealed dagger is the application of "physical force . . . against the person of another" when the need arises. *See* 18 U.S.C. § 16(b) (defining "crime of violence" as an offense that, "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense"). Thus, contrary to the majority opinion's conclusion, Medina's prior conviction for unlawfully carrying a concealed dagger ("the concealed dagger offense") qualifies as a crime of violence under § 16(b).

I agree with the majority opinion that we are guided in our interpretation of § 16(b) by *Chapa-Garza*. But a careful application of *Chapa-Garza*'s logic demonstrates that the possession of a concealed dagger qualifies as a crime of violence. *Chapa-Garza* held that, to constitute a crime of violence under § 16(b), the crime must involve "reckless disregard for the probability that intentional force may be employed." 243 F.3d at 924 (interpreting § 16(b)'s "substantial risk that physical force . . . may be used" language). My conclusion (that the possession of a concealed dagger is a crime of violence) accords with this central holding. In fact, the concealed dagger offense involves *more* than simple recklessness: it requires that the offender "knowingly and intentionally" carry the concealed dagger. *People v. Rubalcava*, 1 P.3d 52, 57 (Cal. 2000).

The majority opinion sidesteps the clear import of *Chapa-Garza* by focusing too narrowly on a single section of the opinion. As the majority opinion observes, *Chapa-Garza* suggested that the phrase "in the course of committing the offense" in § 16(b) implies "force that may be used to perpetrate the offense." *Chapa-Garza*, 243 F.3d at 927. The majority opinion mechanically applies this alleged gloss on the meaning of § 16(b) to conclude that the concealed dagger offense is not a crime of violence. According to the majority opinion, *Chapa-Garza* dictates that the concealed dagger offense does not qualify as a crime of violence under § 16(b) because the offender "perpetrates the crime once he takes possession of and conceals the dirk or dagger," making it "unlikely that any physical force would be used in the process."[11]

The majority opinion errs in concluding that a criminal *completes* the offense as soon as he conceals the dagger. The unlawful possession of a dangerous weapon is an ongoing course of conduct. *See United States v. Walker*, 27 F.3d 417, 419-20 (9th Cir. 1994) (holding that the defendant's offense of illegal possession of a firearm "would not have been completed until the date set forth in the indictment or until he relinquished possession of the machine gun and silencer"); *United States v. Horodoner*, 993 F.2d 191, 193 (9th Cir. 1993) (reasoning that gun possession is a "course of conduct," not an act); *see also United States v. Fleischli*, 305 F.3d 643, 658 (7th Cir. 2002) ("Possession of a firearm is a continuing offense which ceases only when the possession stops."); *United States v. Finley*, 245 F.3d 199, 207 (2d Cir. 2001) (holding that possession of

---

[11] The majority opinion goes even one step further by concluding that the concealed dagger offense does not qualify as a crime of violence "because it is difficult to imagine how one would use force against the person or property of another with the dirk or dagger still concealed upon his or her person." (citations and internal quotation marks omitted). I fear that this assertion trumps reality. One could easily envision a scenario where a gang member is emboldened to start a fight, knowing that the concealed dagger in his possession will enable him to overpower his unsuspecting victim. *See infra* note 5.

-17-

shotgun is a continuing offense); *United States v. Maxim*, 55 F.3d 394, 397-98 (8th Cir. 1995) (holding that criminal statutes prohibiting felons from possessing firearms and prohibiting possession of machine guns are both continuing offenses that, by their nature, do not terminate until the date of the indictment or the voluntary termination of the illegal activity). Thus, an individual continues to commit the offense as long as he holds onto the weapon. And, as the California legislature recognized, the entire time the individual possesses the concealed dagger, there is a substantial, continuing risk that the offender will stab an unsuspecting victim.[12]

This continuing risk of physical violence distinguishes the concealed dagger offense from the offense of unlawfully carrying a firearm into an establishment licensed to sell liquor, the offense that was the subject of our decision in *United States v. Hernandez-Neave*, 291 F.3d 296 (5th Cir. 2001). In *Hernandez-Neave*, we applied *Chapa-Garza* and reasoned that the Texas felony offense of unlawfully carrying a firearm into an establishment licensed to sell alcoholic beverages was not a crime of violence under § 16(b). The court reasoned that physical force is not needed to "complete"

---

[12] This reasoning has support in our case law. We have held that the unlawful possession of certain instruments of violence, such as an unregistered sawed-off shotgun or pipe bomb, creates a substantial risk of violence during the course of possession. *See United States v. Rivas-Palacios*, 244 F.3d 396, 397-98 (5th Cir. 2001) (holding that the Texas crime of possession of an unregistered firearm (a sawed-off shotgun) is a crime of violence as defined in § 16(b), and reasoning that "the unlawful possession of any unregistered firearm, a sawed-off shotgun in this case, 'involves a substantial risk that physical force against the person or property of another' will occur"); *United States v. Jennings*, 195 F.3d 795, 798-99 (5th Cir. 1999) (holding that possession of an unregistered pipe bomb was a crime of violence that could serve as a predicate act for the offense of carrying a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c), and reasoning that "possession of an unregistered pipe bomb, by its very nature, creates a substantial risk of violence"). Although *Rivas-Palacios* did not apply the (then days-old) *Chapa-Garza* framework for interpreting § 16(b), *see United States v. Hernandez-Neave*, 291 F.3d 296, 300 (5th Cir. 2001), and *Jennings* was decided before *Chapa-Garza* and did not apply § 16(b), the reasoning in these two cases helps us assess whether possession of an instrument of violence, such as a concealed dagger, creates a "substantial risk" of violence.

this crime, since "the crime is completed by simply stepping over a threshold while carrying such a weapon." *Id.* at 299. There is no "threshold" requirement for "completing" the concealed dagger offense, as there is for the offense of unlawfully carrying a firearm into an establishment licensed to sell liquor. *See id*. Thus, contrary to the assertion of the majority opinion, our holding in *Hernandez-Neave* does not dictate a particular outcome in this case.[3]

The majority opinion's rigid reliance on a few sentences in *Chapa-Garza* indicates that the majority opinion overlooks the substantial differences between the offenses at issue in *Chapa-Garza* and the present case. *Chapa-Garza* involved a *non-violent* instrument—a vehicle; this case involves a *violent* instrument—a concealed dagger.[4] It is easy to see that carrying a concealed dagger gives rise to a greater risk of intentional physical force than operating a vehicle while intoxicated. A vehicle's main purpose, even if driven by one who is intoxicated, is transportation, *not* violence. *See Chapa-Garza*, 243 F.3d at 927 ("While the victim of a drunk driver may sustain physical injury from physical force being applied to his body as a result of collision with the drunk driver's errant

---

[3] There is another significant difference between *Hernandez-Neave* and the present case. The intent element of the offense in *Hernandez-Neave*, like the intent element of the offense in *Chapa-Garza*, relates only to the offender's non-violent act. *See Hernandez-Neave*, 291 F.3d at 299 (reasoning that the "*intent* portion of the crime" relates only to the offender's intent to enter the establishment while carrying a firearm, a non-violent act). In this case, by contrast, the intent requirement relates to an act that is violent by nature: carrying a concealed dagger. One would "knowingly and intentionally" carry a concealed dagger only to hide his willingness to use that dagger to inflict "great bodily injury or death" if and when the opportunity presents itself. *See* CAL. PENAL CODE § 12020(c)(24). Thus, it is clear that one who commits the concealed dagger offense by "knowingly and intentionally" carrying a concealed dagger is being more than reckless regarding the probability that he will intentionally use physical force in the course of his possession of the dagger. *See Chapa-Garza*, 243 F.3d at 924.

[4] A dagger is a close-in fighting weapon. An offender would need to get within arm's length of his victim before the dagger could be effectively used. Concealment is essential to lull an unsuspecting victim into a false sense of security.

automobile, it is clear that such force has not been intentionally 'used' against the other person by the

drunk driver at all, much less in order to perpetrate any crime, including the crime of felony DWI.").

A concealed dagger, however, is fundamentally an instrument of violence. Its primary purpose under

the California statute is to inflict "great bodily injury or death." CAL. PENAL CODE § 12020(c)(24).

Indeed, the carrying of a concealed dagger is closely associated with gang violence: the California

legislature broadly defined "dirk or dagger" because of its concern that gang members who carry

lethal knives hidden beneath their clothing would be immune from arrest and prosecution under any

other definition. *See Rubalcava*, 1 P.3d at 57 (citing Sen. Rules Com., 3d reading analysis of Assem.

Bill No. 1222 (1995-1996 Reg. Sess.), as amended May 31, 1995, p. 4).[5]  Thus, the concealed

dagger offense, by its nature, involves a substantial risk of physical force.

If the majority opinion is correct that *Chapa-Garza*'s interpretation of § 16(b) compels the

conclusion that the concealed dagger offense is not a crime of violence, then the logic of *Chapa-*

*Garza* is inconsistent with the plain language of § 16(b). Section 16(b) defines a crime of violence

as an offense "that, by its nature, involves a substantial risk that physical force against the person or

property of another may be used in the course of committing the offense." It is unrealistic to

conclude, as the majority opinion does, that carrying a dagger does not "involve[] a substantial risk

that physical force . . . may be used" when the entire purpose of the California statute is to punish

those who would use such a dagger to "cause great bodily injury or death." *By its very nature*, the

act of unlawfully carrying a concealed dagger creates a substantial risk that physical violence "may

---

[5] The majority opinion notes that the concealed dagger was "adjustable." In fact, the PSR explains that the dagger was "sharpened on both sides and was adjustable to be able to fit into a fist or to be straightened out in a locked position." Clearly, this type of weapon is intended for gang violence.

be used in the course of" the offense.[6] Therefore, Medina's prior California conviction for unlawfully carrying a concealed dagger qualifies as a crime of violence under § 16(b).

For the foregoing reasons, I cannot agree with the majority opinion that *Chapa-Garza* compels the conclusion that carrying a concealed dagger is not a crime of violence under 18 U.S.C. § 16(b). If, however, the majority opinion is correct that *Chapa-Garza* dictates this result, then I believe that *en banc* reconsideration is necessary to bring our jurisprudence in line with the plain language of § 16(b). I, therefore, respectfully dissent from the majority's decision to overturn the district court's sound judgment that Medina's concealed dagger offense qualifies as an aggravated felony under 8 U.S.C. § 1101(a)(43).

---

[6]Common sense tells us that a confrontation is more likely to escalate to violence when one of the participants is carrying a concealed weapon. When a person is carrying a concealed dagger, that may well embolden the person to instigate a violent confrontation. The individual may use physical force (*i.e.*, by striking an adversary) without ever drawing the weapon. In this additional respect, carrying a concealed dagger creates a "substantial risk that physical force" will be used while the individual is committing the offense.