United States Court of Appeals
Fifth Circuit

**F I L E D**

**August 22, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

————————————————

No. 03-21026

————————————————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

ENRIQUE ESCOBEDO-TORRES,

Defendant - Appellant.

———————————————————————————————————————————

Appeal from the United States District Court
for the Southern District of Texas, Houston

———————————————————————————————————————————

Before REAVLEY, JOLLY, and PRADO, Circuit Judges.

PER CURIAM:[*]

Enrique Escobedo-Torres challenges his sentence for illegal reentry into the United States after deportation.  For the following reasons, we affirm.

I.

In August 1999, Escobedo-Torres was deported as an alien convicted of an aggravated felony pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii).  In September 2002, he was arrested in

———————————————————

[*]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

1

Houston, Texas for an open-container violation.  He admitted that he had been deported on August 5, 1999 and then returned to Texas on August 12, 1999 by crossing the Rio Grande River.  A grand jury charged Escobedo-Torres with being unlawfully present in the United States following deportation and conviction for an aggravated felony, in violation of 8 U.S.C. §§ 1326(a) and (b)(2).

Before trial, Escobedo-Torres filed a motion to suppress evidence of his 1999 deportation and to dismiss the indictment in the present case.  At the suppression hearing, he explained that he intended to collaterally challenge his prior deportation.  In particular, he argued that it was fundamentally unfair and violated due process, and therefore could not form the basis of his current indictment.  He testified, among other things, that he did not remember receiving official documents from the INS notifying him of his impending removal proceedings, his removal order, and right to appeal that order.  He also claimed that he did not recall being given documents warning him that he could not legally return to the United States without the approval of the Attorney General.  The Government responded by offering testimonial and documentary evidence that Escobedo-Torres had been served with the required paperwork.  The district court denied the motion to suppress.

Seven months after he was indicted and three days before his scheduled trial date, Escobedo-Torres waived his right to a jury

trial.  After a bench trial, the district court found him guilty.

The Presentence Report ("PSR") recommended a two-level upward adjustment for obstruction of justice based on the probation officer's conclusion that Escobedo-Torres had lied at the suppression hearing about whether he had received written notice and warnings in his prior deportation case.  The PSR also recommended that the court deny credit for acceptance of responsibility based on Escobedo-Torres's late waiver of a jury trial and his refusal to stipulate facts relating to his offense.  In calculating Escobedo-Torres's criminal-history category, the PSR assessed two points for a DWI conviction that Escobedo-Torres committed in 1991, and one point for a theft he committed in 1992.  Two more criminal-history points were added based on his two state-court convictions in 1994 for DWI and a possession of a firearm, respectively.  The result was a criminal-history category of VI, a combined total offense level of 26, and a recommended sentencing range of 120 to 159 months' imprisonment.

Escobedo-Torres objected to the district court's obstruction-of-justice assessment; denial of credit for acceptance of responsibility; consideration of his 1991 convictions for DWI and theft, which he claimed were too old to be calculated into his criminal-history score; and treatment of his 1994 state-court convictions as separate rather than related when calculating his criminal-history score.  The district court denied Escobedo-Torres's objections, expressly adopted the findings and

3

recommendations in the PSR, and imposed a sentence of 120 months' imprisonment, 3 years' supervised release, and a $100 special assessment. Escobedo-Torres timely appealed.

II.

*A.*

On appeal, Escobedo-Torres first argues that the district court erred by imposing the two-level sentence enhancement for obstruction of justice. Specifically, Escobedo-Torres challenges the district court's finding that he testified falsely at the suppression hearing about whether he received the immigration paperwork related to his 1999 deportation. We review the district court's obstruction-of-justice finding[1] for clear error, "keeping in mind that the Government need show, and the court need find, only by a preponderance of the evidence" that Escobedo-Torres gave false testimony. *See United States v. Greer*, 158 F.3d 228, 240 (5th Cir. 1998). "A finding is clearly erroneous when, although some evidence supports the decision, we are left with the definite and firm conviction that a mistake has been committed." *United States v. Tello*, 9 F.3d 1119, 1122 (5th Cir. 1993) (internal quotation marks omitted).

The U.S. Sentencing Guidelines Manual ("USSG") § 3C1.1

---

[1]Because the district court expressly adopted all of the findings in the PSR, we review the obstruction of justice finding in the PSR as the district court's own. *United States v. Cabral-Castillo*, 35 F.3d 182, 187 (5th Cir. 1994) (citing *United States v. Laury*, 985 F.2d 1293, 1308 n. 18 (5th Cir. 1993)).

4

directs district courts to increase a defendant's offense level by two levels if he "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the investigation, prosecution, or sentencing of the instant offense. . . ." A defendant obstructs justice by means of perjury when he "gives false testimony concerning a material matter with the willful intent to provide false testimony." 507 U.S. 87, 95–96 (1993); *see also* USSG § 3C1.1, comment., n.4(b) ("committing, suborning, or attempting to suborn perjury"); *id.* § 3C1.1, comment., n.4(f) ("providing materially false information to a judge"). "[N]ot all inaccurate testimony or statements necessarily reflect a willful attempt to obstruct justice." *Id.* § 3C1.1, comment., n.2; *see also Dunnigan*, 507 U.S. 87, 95–96 (1993). When a defendant gives false testimony due only to confusion, mistake, or a bad memory, he has not obstructed justice. *Id.* Rather, "willful" obstruction of justice by a defendant is "conscious, deliberate, voluntary, and intentional." *Greer*, 158 F.3d at 239.

Arguing that he testified truthfully, Escobedo-Torres claims the enhancement was improper because the court could not show that he possessed the "willful intent" to obstruct justice. To this end, Escobedo-Torres first asserts that the district court failed to make a specific finding regarding his intent. He is correct that such a finding is required in this circuit. *Greer*,

158 F.3d at 239 ("[A] § 3C1.1 enhancement implies a mens rea requirement, . . . and requires the district court to make a specific finding of intent."). However, his contention that the district court did not meet this requirement fails.

The findings in the PSR, which the court expressly adopted, explain that Escobedo-Torres gave false testimony when he "testified during a suppression hearing immediately prior to trial that he had never received any paperwork from the government indicating that he was not allowed to re-enter the United States." The court concluded that by giving such testimony, Escobedo-Torres had "willfully obstructed or impeded the administration of justice during the course of the prosecution of the instance offense of conviction." Accordingly, the district court set forth a specific finding of intent. *Cf. Reed*, 49 F.3d at 901 (holding that the district court failed to make a specific finding of intent where the court's findings did not reveal the particular basis for the enhancement and "it made no findings that the conduct it believed was obstructive was willfully so").

Escobedo-Torres next argues that the district court's finding was clearly erroneous because his testimony was not perjured. Specifically, he contends that he never claimed he did not receive the immigration paperwork; rather, he maintains that he merely testified that he could not remember getting the

documents.

Throughout the hearing, Escobedo-Torres stated that he could not remember receiving three documents from the INS: the Notice of Intent to Issue a Final Administrative Removal Order ("Notice of Intent"), the Order of Removal, and the Warning to Alien Removed or Deported (that he may not return without the permission of the Attorney General). Escobedo-Torres offers the following testimony from his cross-examination:

| | |
|---|---|
| Government: | Okay. Now, you stated that the Order of Removal, which is Defendant's Exhibit 6, that you never saw it; is that correct? |
| Escobedo-Torres: | Yes, sir. |
| Government: | All right. It is possible you just don't remember seeing it or did you absolutely for sure not see it? |
| Escobedo-Torres: | I don't remember. |
| Government: | You simply don't remember? |
| Escobedo-Torres: | Yes, sir. |
| Government: | So if the person who signed the Certificate of Service testifies that he handed it to you, then he must be right, true? |
| Escobedo-Torres: | Yes. |
| Government: | Well, he's in the courtroom right now and he will testify that he gave you this; okay? So he will testify that you did have notice, you did see it. Now, I want you to look again at Defense Exhibit No. 7 where it says—the block is checked—"At no time may you reenter the United States." And you claim you never |

7

```
                                got this; correct?

Escobedo-Torres:    I don't remember getting that paper.

Government:         Okay.  Are you saying you absolutely
                    didn't get it or you just don't
                    remember?

Escobedo-Torres:    I don't remember.

Government:         So you may well have gotten it?

Escobedo-Torres:    Yes, sir.
```

However, during the same cross-examination, Escobedo-Torres stated with certainty that he had never seen another document—the Notice of Intent.

```
Government:         Mr. Escobedo-Torres, I would like to
                    ask you about Defense Exhibit No. 1
                    [Notice of Intent].  You stated
                    earlier that you did not remember
                    being served with this document;
                    correct?

Escobedo-Torres:    Yes, sir.

Government:         Are you flat out denying that you
                    were served with the document or you
                    just don't remember?

Escobedo-Torres:    No, I'm not denying anything.  I
                    don't remember.

Government:         All right.  So it's entirely
                    possible, isn't it, that, as Defense
                    Exhibit No. 3 [Form I-851
                    acknowledging receipt of Notice of
                    Intent] shows, you refused to
                    acknowledge?  This was on February
                    12th.  Isn't that entirely possible?

Escobedo-Torres:    I had never before seen that paper.

Government:         But the next day you had the piece
                    of paper and it looked like you
                    thought about it again and you
```

8

decided that you would contest, isn't that what happened on February 13th?

Escobedo-Torres:    The paper I signed, that's the only paper I see.

Government:         Excuse me?

Escobedo-Torres:    The paper I signed . . . on February 13, that's the only paper I see.

The paper Escobedo-Torres signed on February 13, 1999——Defense Exhibit No. 3——was a Form I-851 acknowledging receipt of the Notice of Intent.  Thus, his testimony was that even though he received and signed an acknowledgment form for the Notice of Intent, he had never been given the Notice of Intent itself.

Notwithstanding this testimony, the Government presented credible contradictory evidence that Escobedo-Torres had in fact been served with the proper documentation.  Some of the documents on their face indicate that Escobedo-Torres received them.  The Notice of Intent contains a Certificate of Service executed by an INS officer.  The certificate states, "I served this Notice of Intent. I have determined that the person served with this document is the above named individual," and the date and manner of service are listed as "2/12/99 by hand."  And, as noted above, even though Escobedo-Torres claimed never to have received the Notice of Intent, the form acknowledging receipt of that document bears his signature.

Other circumstantial evidence suggests that Escobedo-Torres

9

received the Notice of Intent, Order of Removal, and paperwork warning him that it would be illegal to return to the United States.  On February 12, 1999, the date that the Government purportedly served Escobedo-Torres with the Notice of Intent, he wrote a rebuttal letter to the INS in which he referred to "papers" regarding deportation given to him by an "officer." Finally, two INS detention officers testified that normal procedures would include service of removal and warning documentation to each alien upon deportation, and that the documents in Escobedo-Torres's case demonstrated that he had been served according to these procedures.

When reviewing the imposition of an obstruction-of-justice enhancement, we defer to the credibility determinations of sentencing court unless they are clearly erroneous.[2]  The district court here ultimately believed that Escobedo-Torres had been served with the required documentation, and that he was being purposefully misleading about these events, rather than forgetful; the evidence supports the district court's judgment. Accordingly, the district court did not clearly err in enhancing Escobedo-Torres's sentence for obstruction of justice.

---

[2]*See Greer*, 158 F.3d 228 (holding that the district court did not clearly err in applying an obstruction of justice enhancement where it was convinced that the defendant had willfully feigned mental incompetency to obstruct and delay proceedings); *see also United States v. Murray*, 65 F.3d 1161, 1165 (4th Cir. 1995) (holding that sentencing court did not err in finding that defendant's testimony that she did not remember her confession was perjury based upon other credible evidence).

Escobedo-Torres next argues that he should have been given credit for acceptance of responsibility under USSG § 3E1.1.

This Court reviews the district court's refusal to reduce a defendant's offense level for acceptance of responsibility with a standard "even more deferential than a purely clearly erroneous standard." *United States v. Washington*, 340 F.3d 222, 227-28 (5th Cir. 2003) (citing *United States v. Maldonado*, 42 F.3d 906, 913 (5th Cir. 1995)).

In denying Escobedo-Torres's motion, the district court stated that "although [Escobedo-Torres] gave a statement for consideration of acceptance of responsibility, the Government indicated he gave false testimony during his suppression hearing. As a result, he's not eligible for the reduction." Under USSG § 3E1.1, a sentencing court may reduce a defendant's base-offense level by two levels "if the defendant clearly demonstrates acceptance of responsibility for his offense." The application notes further explain:

> This adjustment is not intended to apply to a defendant
> who puts the government to its burden of proof at trial
> by denying essential elements of guilt, is convicted, and
> then admits guilt and expresses remorse. Conviction by
> trial, however, does not automatically preclude a
> defendant from consideration for such a reduction. In
> rare situations a defendant may clearly demonstrate an
> acceptance of responsibility for his criminal conduct
> even though he exercises his constitutional right to a
> trial. This may occur, for example, where a defendant

11

> goes to trial to assert and preserve issues that do not relate to factual guilt (e.g. to make a constitutional challenge to a statute or a challenge to the applicability of a statute to his conduct). In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct.

USSG § 3E1.1, comment., n.2.

Escobedo-Torres claims that he was entitled to credit for acceptance of responsibility because he admitted to all the elements of his offense at trial. He claims his sole reason for going to trial was to preserve his right to appeal his prior deportation, which he challenged on constitutional grounds in his motion to suppress.

Escobedo-Torres's challenge fails because whether he challenged his factual guilt is not conclusive of whether he deserved credit for accepting responsibility for his offenses. As the Guidelines indicate, the determination that a defendant who goes to trial has "clearly demonstrated" acceptance of responsibility is "based primarily upon pretrial statements and conduct." *Id.* As we have already noted, the district court found that Escobedo-Torres gave false testimony at the suppression hearing. In addition, Escobedo-Torres refused to stipulate to any facts in his case and waited until three days before his scheduled trial date to waive his right to a jury trial. Given these circumstances, we defer to the district court's finding that Escobedo-Torres did not merit an offense-

12

level reduction for acceptance of responsibility.

*C.*

Escobedo-Torres next argues that the district court erred in calculating his sentence by assessing two criminal-history points for a DWI conviction that occurred on February 13, 1991, and one criminal history point for a theft conviction that occurred on May 19, 1992. He contends that these prior convictions should not have been considered because they occurred more than ten years before September 30, 2002——the date of the offense alleged in Escobedo-Torres's indictment for illegal reentry. The district court overruled Escobedo-Torres's objection based on its conclusion that the date of his offense was actually August 12, 1999——the date on which Escobedo-Torres admitted to illegally reentering the United States.

This Court reviews the district court's application of the sentencing guidelines de novo, and the district court's findings of fact are reviewed for clear error. *See United States v. Villegas*, 404 F.3d 355, 359 (5th Cir. 2005). The defendant's criminal-history category is based on his prior convictions under USSG § 4A1.1. Sentences imposed more than ten years before the commencement of the instant offense are not counted. USSG § 4A1.1, comment., n.2; *see also id.* § 4A1.2(e)(2), (3).

Under 8 U.S.C. § 1326, the offense of illegal reentry may be committed by a deported alien on three separate occasions: (1)

13

when he illegally enters the United States; (2) when he attempts to illegally enter the United States; or (3) when he is at any time found in the United States. *United States v. Santana-Castellano*, 74 F.3d 593, 597 (5th Cir. 1996). The offense is a continuing one that commences when a defendant reenters the United States illegally and continues until the defendant is found in the United States. *Id*. at 598. Escobedo-Torres admitted that he reentered the United States on August 12, 1999. Accordingly, his offense of illegal reentry commenced on that date. Both of the convictions to which Escobedo-Torres objects occurred within ten years of August 12, 1999, and were thus properly included in the determination of Escobedo-Torres's criminal history score.

*D.*

Finally, Escobedo-Torres argues that the district court erred in counting his 1994 state-court sentences for DWI and illegal possession of a firearm as separate, unrelated sentences when calculating his criminal-history score under USSG § 4A1.2. He contends that the court should have treated the sentences imposed for those convictions as a single sentence arising from related cases. He bases his argument on the fact that he was arrested for both offenses on August 20, 1994, and the resulting convictions were consolidated for sentencing purposes.

The determination of whether prior convictions are related

14

under § 4A1.2 because they are functionally consolidated for trial is a fact-intensive decision that is accorded deferential review under the clear-error standard. *See Buford v. United States*, 532 U.S. 59, 64–66 (2001).

In computing a defendant's criminal-history score, prior sentences from related cases are to be treated as one sentence. USSG § 4A1.2. The Guidelines indicate that sentences are related if the offenses occurred on the same occasion, were part of a "single common scheme or plan," or were consolidated for trial or sentencing. *See* USSG § 4A1.2, comment., n.3. Whether convictions that have been consolidated are related under § 4A1.2 is guided by "case-specific details." *Buford*, 532 U.S. at 65. A district judge may consider factual details of the crimes at issue to determine whether factual connections or administrative convenience resulted in consolidation for sentencing. *Id.* "[A] finding that prior cases were consolidated will require either some factual connection between them, or else a finding that the cases were merged for trial or sentencing." *United States v. Huskey*, 137 F.3d 283, 288 (5th Cir. 1998).

Formal consolidation is not required for a consolidation finding when factually distinct offenses are charged in the same criminal information. *Id*. Just because a defendant is sentenced for factually distinct crimes on the same day does not, however, mean the convictions are related under § 4A1.2. *Id*. Even the

imposition of identical, concurrent sentences will not result in factually distinct offenses being considered related.  *Id*.

Escobedo-Torres was arrested for both offenses on August 20, 1994; he was sentenced for both convictions on the same day; and he received concurrent sentences.  However, the PSR indicates that he committed the offenses on different dates: the commission date for the DWI is June 9, 1994; and the commission date for the illegal possession offense is August 20, 1994.  In addition, no formal order of consolidation was issued; separate docket numbers were used; and the two offenses are factually dissimilar. Accordingly, the district court's finding that the offenses were unrelated is not clearly erroneous.

### III.

Based on the foregoing, we AFFIRM the sentence imposed by the district court.

AFFIRMED.

16