IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 9, 2009

Charles R. Fulbruge III
Clerk

No. 07-40068

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

SERGIO CARMEN QUIROZ-HERNANDEZ

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
(06-CR-505)

Before HIGGINBOTHAM, ELROD, and HAYNES, Circuit Judges.
PATRICK E. HIGGINBOTHAM, Circuit Judge:[*]

A jury in South Texas convicted the appellant, Mexican citizen and U.S. resident alien Sergio Carmen Quiroz-Hernandez, of illegal transportation of aliens in violation of 8 U.S.C. § 1324 and he has timely appealed. He raises three issues: that the sentencing court erroneously applied a two-level upward adjustment to his base offense level pursuant to U.S.S.G. § 3C1.1 for obstruction of justice, that the trial court erroneously failed to declare a mistrial after a government witness testified concerning his post-arrest

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

silence, and that the sentencing court erred in concluding that there was insufficient evidence to grant him a three-level reduction in his base offense level pursuant to U.S.S.G. § 2L1.1(b)(1) for commission of the offense for other than financial gain.

## BACKGROUND

On the evening of February 28, 2006, Quiroz-Hernandez drove a tractor-trailer into a truck lane on a border checkpoint on I-35, fifteen miles north of Laredo, Texas. There he was briefly questioned by border agent Jaramillo; he was then pulled over when trained dogs alerted to the presence of drugs or people in his trailer; finally he was arrested when border agents discovered illegal aliens secreted in his trailer.

Quiroz-Hernandez's tractor belonged to Juan Pina, who leased it to Arre Transport, a Dallas trucking dispatcher for whom Quiroz-Hernandez had worked for only a week before he was apprehended. Pina and Arre had hired Quiroz-Hernandez to drive a trailer belonging to Schneider National Carriers in Laredo to Denton, Texas, just north of Dallas, a drive of seven to eight hours.

At trial, the prosecution demonstrated that although Quiroz-Hernandez received a bill of lading as he left the Laredo truck yard that listed two seal numbers, his trailer was not sealed when Quiroz-Hernandez was apprehended. Jorge Bustamante, terminal manager of Schneider National Carriers in Laredo, testified as to the tight security at the lot from which Quiroz-Hernandez picked up the trailer. Guards physically check and record the seal numbers of trailers as they enter and exit the lot. In this case, records suggest that the trailer entered the lot at 1:39pm on February 24,

2006, and exited it at 4:14pm on February 28: the seal numbers remained the same from entrance to exit, which seems to demonstrate that the trailer had not been accessed in the interim.[1]

One individual found in the trailer, an undocumented alien and citizen of Mexico named Jose Luis Enrique Moreno-Gutierrez, testified that he saw Quiroz-Hernandez standing by the unsealed trailer when they boarded it. Moreno-Gutierrez and another similarly situated alien, Armando Patricio-Martinez, testified that they entered the United States with the aid of smugglers who eventually brought them to a liaison point where they entered Quiroz-Hernandez's trailer. They were ultimately bound for Georgia.

Quiroz-Hernandez took the stand in his own defense. He testified that he had picked up the trailer without checking whether it had seals at all, claiming that the trailers on Schneider's lot were too closely packed to permit such a check. He testified that he had stopped to eat at a restaurant in Laredo named Las Asadas, then rested in his truck cabin for a couple of hours before resuming his journey, again without rechecking his seals, although he testified that he checked the tires and gear. He testified that he did not hear any noises while he rested, because the air conditioning was running.

On June 6, 2006, Quiroz-Hernandez was convicted by a jury in the United States District Court for the Southern District of Texas, per (visiting) Judge Lemelle, of illegal transporting of aliens in violation of 8 U.S.C. § 1324.[2] On January 11, 2007, the court, per Judge Kazen, sentenced him to

---

[1] Seals are tools used to insure the security of merchandise in transit. Trucking companies seal trailers and record the numbers on bills of lading, and drivers usually bear responsibility for preserving the seals while in transit.

[2] See 8 U.S.C. § 1324(a)(1)(A)(ii).

thirty-four months in prison to be followed by three years of supervised release. He timely appealed.

## I.

Quiroz-Hernandez claims that the sentencing court erroneously applied a two-level upward adjustment to his base offense level pursuant to U.S.S.G. § 3C1.1 for obstruction of justice. This adjustment was one of several enhancements recommended in the Presentence Report and accepted by the district court, which explicitly adopted the factual findings in the Report.

The obstruction of justice enhancement is appropriate when a defendant commits perjury.[3] Perjury is offering "false testimony concerning a material matter with the willful intent to provide false testimony, rather than a result of confusion, mistake, or faulty memory."[4] The Sentencing Guidelines comment defines "material" evidence as any "evidence, fact, statement, or information that, if believed, would tend to influence or affect the issue under determination."[5]

At sentencing, Quiroz-Hernandez objected to the application of the obstruction of justice adjustment, but he did not object to the factual findings concerning Quiroz-Hernandez's false statements at trial that were stated in the Presentence Report and adopted by the sentencing judge. We review the application of the obstruction of justice enhancement for clear error,[6] but the underlying factual findings concerning Quiroz-Hernandez's perjurious

---

[3] U.S.S.G. § 3C1.1, n. 4(b).

[4] United States v. Dunnigan, 507 U.S. 87, 94 (1993).

[5] 3C1.1, n.6.

[6] See United States v. Gonzalez, 163 F.3d 255, 263 (5th Cir. 1998).

statements, which were unobjected-to at sentencing, are reviewed under the higher standard of plain error.[7]  On plain error review, "the court of appeals may only reverse when: (1) there was an error, (2) the error was clear and obvious, and (3) the error affected the defendant's substantial rights."[8]

On appeal, Quiroz-Hernandez's challenges speak not to the obstruction of justice enhancement or the finding of perjury per se but rather to the predicate findings for the enhancement and for perjury.  He seeks to explain away a number of his testimonial statements, arguing that "[t]here are other explanations, other than untruth, that can conceivably explain these responses . . . ."  But this bears little relevance to our decision, given the nature of our review – or even given the lower standards that applied before the sentencing court.[9]  Quiroz-Hernandez offered numerous statements at trial that the Report and the judge (who relied on the unobjected-to factual findings in the Report) reasonably interpreted to amount to a denial of material facts concerning his knowledge and transportation of the undocumented aliens in his trailer.  The jury found, and ample evidence suggested, that Quiroz-Hernandez in fact knew that he was transporting

---

[7] United States v. Johnson, 352 F.3d 146, 149 n.3 (5th Cir. 2003).  The record makes perfectly clear that the factual findings supporting the finding of perjury were not objected to at trial.  The closest that defense counsel came to such objection was the statement: "[Quiroz-Hernandez] didn't go out of his way to lie about anything on the stand, Your Honor."  This is a fair statement; but it is not a denial that he did indeed perjure himself, even if he did not "go out of his way" to do so.  The sentencing judge stated, without challenge, "I've looked at the report and I'm – I have not been told by you or anyone that that's inaccurate."  And the report clearly lays out a factual finding of perjury that is not so unreasonable as to merit reversal.

[8] Id.

[9] See, e.g., United States v. Escobedo-Torres, 146 Fed. App'x 736, 738 (5th Cir. 2005) (unpublished; see Fifth Circuit Rule 47.5.4).

these individuals unlawfully. The sentencing judge in this case was not present for trial, but with the help of the Report he made the required factual determinations that supported his finding of perjury, and accordingly he applied the obstruction of justice enhancement. There is no reversible error as to this sentencing enhancement.

## II.

Quiroz-Hernandez also claims that the trial court erroneously failed to declare a mistrial after a government witness testified concerning his post-arrest silence. He claims that this failure violated his constitutional rights. The testimony that Quiroz-Hernandez complains of went as follows, with the complained of questions and answers bolded:[10]

> Q. At some point, did you take the Defendant into custody?
> A. Yes, I did. As soon as we realized what we had here, I asked the driver to turn around and I cuffed him.
> Q. What reaction, if any, did the Defendant have to being cuffed when you did that?
> A. Initially, as I walked back with him to the back of the trailer, he – when he saw that there was [sic] no seals, he acted surprised, like, hey, you know, they're supposed to have seals.
> Q. Did he say anything?
> A. Very little. That's about as much as I got out of him that I recall.
> Q. What about his reaction, if any, to being placed under arrest?
> DEFENSE: Objection, Your Honor, relevance.
> GOVERNMENT: As to the Defendant's demeanor, Your Honor.
> DEFENSE: At the time of arrest, Your Honor. After he was arrested.
> COURT: I'll overrule. A little bit more specific, what was his

---

[10] We have edited the captions in the transcript portion for clarity.

demeanor like, if anything, at the time of his arrest?
A: He pretty much, he just stayed quiet. He didn't
explain how he thought maybe something happened or –
DEFENSE: Objection, Your Honor.
COURT: Sustained.
DEFENSE: Can I ask for instruction, Your Honor?
COURT: Ladies and Gentlemen of the Jury, again, you go by
what the evidence is from the witness stand. This is getting a
little bit too speculative in terms of demeanor, Counsel.
DEFENSE: And move for a mistrial, Your Honor. Fifth
Amendment.
COURT: Counsel approach the bench.

The defense did not object to the first set of answers, so the review is for plain error. As to the second, in addition to the curative instruction here, the court gave another, curative instruction for the jury to base its judgment only on the admitted evidence, as part of the jury charge. The defense objected to neither of the instructions. Our review is again for plain error;[11] even if its motion for a mistrial, which was apparently not renewed, is construed as a general objection to the sufficiency of this curative instruction, the review would be for abuse of discretion, and the alleged error does not rise even to this lower level. The two contested points in the testimony are brief and not particularly salient to the crucial points in dispute in this case. Nor did the prosecution attempt to make any use of these comments.

## III.

In his third argument on appeal, Quiroz-Hernandez claims that the sentencing court erred in concluding that there was insufficient evidence to

---

[11] See, e.g., United States v. Salinas, 480 F.3d 750, 755-56 (5th Cir. 2007); United States v. Guzman, 1994 WL 574711, *6 (5th Cir. 1994) (unpublished; see Fifth Circuit Rule 47.5.4).

grant him a three-level reduction in his base offense level pursuant to U.S.S.G. § 2L1.1(b)(1) for commission of the offense for other than financial gain.[12]

The guideline that the court refused to apply to lower Quiroz-Hernandez's sentencing level provides: "If (A) the offense was committed other than for profit, . . . and (B) the base offense level is determined under subsection (a)(3), decrease by 3 levels." While the trial evidence for the jury's special finding as to commercial or private financial motivations may have been thin, other evidence, outlined in the Presentence Report and not challenged by Quiroz-Hernandez, clearly supported the sentencing court's finding that the offense was committed for profit, and therefore that Quiroz-Hernandez should not receive the three-level lowering of his sentencing level. What is more, this issue was apparently not preserved, so the review would

---

[12] At least, we will construe his argument thus, although at times he casts it as a "sufficiency of the evidence" challenge to the "commercial advantage or private financial gain" component of the statute under which Quiroz-Hernandez was convicted. This statutory section, concerning which the jury made a special finding, and concerning which Quiroz-Hernandez preserved his objection at trial, raised the statutory maximum sentence for which Quiroz-Hernandez was eligible. But the private financial gain/statutory maximum issue is independent of the sentencing issue, and we need not review the former issue – i.e., the sufficiency of the evidence for the jury's special finding – because this finding made no difference to the outcome of Quiroz-Hernandez's conviction or sentence. His conviction under § 1324 would be valid with or without the "financial gain" component. The financial gain component merely raises the statutory maximum sentence for the transportation offense, and Quiroz-Hernandez's sentence was below the lower, five-year statutory maximum for the offense in the absence of the financial gain component. See 8 U.S.C. § 1324(a)(1)(B)(i). Sentencing documents make clear that the jury's special finding did not affect his sentencing, which was based on separate findings.

be under a plain error standard.

On this score as on his other challenges, Quiroz-Hernandez raises no reversible error.

## CONCLUSION

Quiroz-Hernandez has failed to point to any reversible error in his trial or sentencing. Accordingly, we AFFIRM that judgment.